## WINTER *v.* CROWLEY

[No. 19, September Term, 1966.]

*Decided February 8, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, McWILLIAMS and FINAN, JJ.

*Patrick T. Moran,* with whom was *Stedman Prescott, Jr.*
on the brief, for appellant.

BARNES, J., delivered the opinion of the Court.

Stephen B. Crowley, Jr., was granted a divorce a vinculo
matrimonii from Anne Marie Winter on March 21, 1961. The
decree awarded custody of their four children to Mr. Crowley.
On October 5, 1965, Mrs. Winter was adjudged in contempt
of court for unlawfully removing from Mr. Crowley's custody
two of their children and harboring them, contrary to the di-
vorce decree. By a writ of attachment, the Sheriff of Montgom-
ery County was directed to take Mrs. Winter into custody un-
til she should purge herself of contempt. The writ remained
unexecuted, however, because Mrs. Winter had moved from
Maryland to the District of Columbia.

Later, Mr. Crowley filed a partition suit against his ex-wife for sale of a house in Rockville. Mrs. Winter filed exceptions in the partition suit, which were set for hearing on February 11, 1966. When Mrs. Winter appeared in the Circuit Court for Montgomery County on the hearing day, she was taken into custody by a deputy sheriff, at the request of Mr. Crowley's attorney, pursuant to the outstanding writ of attachment.

Mrs. Winter moved to quash the arrest pursuant to the writ of attachment on the ground that she was immune from arrest on such process, under Maryland Rule 104 g, while participating in the partition suit. The motion was denied. Mrs. Winter has appealed.

The Maryland Rules grant immunity from service of process to non-residents attending courts in this State. Rule 104 g provides:

> "During such time as a nonresident is in this State for the purpose of testifying as a witness or for prosecuting or defending an action, he shall not be subject to service of process."

Rule 5 y defines "process" as:

> "any written order issued by a court to secure compliance with its commands, or to require action by any person, including, but not limited to a summons at law or in equity, an order of publication, a commission, a writ and an order of any kind."

Rule 5 ff defines "writ" as

> "a written precept or order, issuing from a court, addressed to a sheriff or other officer of law, or directly to the person whose action the court desires to command, either at the commencement of an action, or as incidental to its progress, requiring performance of a specified act, or giving authority and commission to have such act done."

The lower court denied Mrs. Winter's motion because, in its opinion, Rule 104 g—

"does not apply to the arrest of persons who are directed to be arrested by virtue of a bench warrant that has issued after a case has been concluded. * * * [T]he Court does not believe that after an adjudication in a contempt proceeding that is final in nature and form, that the sheriff would be relieved of exercising the power and authority which he is directed to exercise by the issuance of the bench warrant. If it were the law of this State the sheriff would have to be guarded, or guard himself against the attachment of a party named in the bench warrant on the excuse or the fact that they are appearing in court as a witness. * * *."

We must disagree with this conclusion of the court below.

We find no authority in Rule 104 g for cutting off the immunity from "service of process" once a person is adjudged in contempt of court. It still remained for Mrs. Winter to be brought before the court for punishment, and the bench warrant ordering the sheriff to do this was clearly within the meaning of "process" as defined by Maryland Rule 5 y, *supra*. Moreover, the purpose of granting immunity—to give a civil litigant or witness "a free and untrammeled opportunity to present his case" *Long v. Hawken*, 114 Md. 234, 79 Atl. 190 (1911)— applies equally at every stage of the proceeding in which process is attempted to be served.

It is unnecessary to express an opinion on the important question of whether Rule 104 g extends its immunity to a *criminal* arrest because the contempt proceedings below were purely civil in nature. Actions for contempt may be either civil or criminal in character. *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 77 A. 2d 305 (1951). The same act—in this case refusing to adhere to the custody decree of the Circuit Court— has been the subject of both kinds of proceedings. See e.g., *In re Pierce*, 44 Wis. 411 (1878) ; *Kenimer v. State*, 81 Ga. App. 437, 59 S. E. 2d 296 (1950) ; *Rosin v. Superior Court*, 181 Cal. App. 2d 486, 5 Cal. Rptr. 421, 431 (1960) ; *Coles v. Coles*, 202 A. 2d 394 (D. C. Ct. of Appeals, 1964) ; *Kemp v. Kemp*, 206 A. 2d 731 (D. C. Ct. of Appeals, 1965) ; *Wellesley v. Duke of Beaufort*, [1831] Russ & M. 639, 39 E. R. 538.

Chief Judge Marbury in *Donner v. Calvert Distillers Corp.*, 196 Md. at 484-85, 77 A. 2d at 308 quoted from the leading case of *Gompers v. Buck Stove & Range Co.*, 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1917) to explain the distinction between civil and criminal contempt:

> "It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison."

See also, *Shillitani v. United States,* 384 U. S. 364, 368 (1966); *Penfield Company of California v. Securities & Exchange Commission,* 330 U. S. 585, 590 (1947).

The Supreme Court of Pennsylvania has delineated five factors which generally point to a civil contempt: (1) the complainant is usually a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion. *Knaus v. Knaus,* 387 Pa. 370, 127 A. 2d 669 (1956); *Coles v. Coles, supra.* To these factors we add that in Maryland civil contempt need be proved only by a preponderance of the evidence, while criminal contempt must be shown beyond a reasonable doubt. *Donner v. Calvert Distillers Corp., supra.*

Applying these criteria to the case at bar it becomes apparent that the proceeding against Mrs. Winter was for civil rather

than criminal contempt. (1) The contempt proceeding was instituted at the instance of Mr. Crowley, not the State. (2) The proceeding was entitled and filed as part of the original divorce action. (3) Holding Mrs. Winter in contempt afforded relief to Mr. Crowley. (4) The relief requested was primarily for the benefit of Mr. Crowley, the complaining party, the court not appearing to have considered the vindication of its own authority as more than an incidental result of the motion. (5) The act complained of—Mrs. Winter's refusal to surrender custody of two of her children — standing alone did not constitute a crime, nor was there a finding that her conduct was wilful or contumelious. (6) There is no transcript before us of the contempt proceeding, which was heard *ex parte* because Mrs. Winter did not appear. Maryland Rule P4 c. The court's order of October 5, 1965, merely states that "the decree passed herein has not been complied with by the defendant," and there is no indication that the failure to comply with the decree was proved beyond a reasonable doubt.

The proceeding adjudicating Mrs. Winter in contempt and the hearing for sentence pursuant to this adjudication being civil in nature, there is no doubt that the immunity granted by Maryland Rule 104 g applies. Mrs. Winter's arrest while attending and participating in an unrelated action in this State should have been quashed by the lower court and Mrs. Winter released from custody.

> *Order of February 14, 1966 of the lower court reversed and it is ordered that the attachment of Mrs. Anne Marie Winter, the appellant, on February 11, 1966 by the sheriff of Montgomery County be quashed and Mrs. Winter be released from custody, the appellee to pay the costs.*