# TYLER *v.* BALTIMORE COUNTY, MARYLAND ET AL.

[No. 217, September Term, 1969.]

*Decided December 8, 1969.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Richard A. Reid,* with whom were *Royston, Mueller, Thomas & Reid* on the brief, for appellant.

*Thomas J. Aversa, Jr.* and *Harry S. Shapiro, Assistant County Solicitors,* with whom was *R. Bruce Alderman, County Solicitor,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

In *Tyler v. Baltimore County,* 251 Md. 420, Tyler, who is also the present appellant, sought to reverse the refusal of the trial court to grant him the writ of mandamus to compel officials of Baltimore County to approve his application to operate a sanitary landfill on a site in the lower end of the County known as the Norris Farm, and to issue him a permit for such an operation. We remanded that case without affirmance or reversal to permit the lower court to determine whether Norris Lane leading to the site was a public or a private road, holding that if it was a public road the County could not, as one of the prerequisites to his receiving the permit, compel Tyler to widen and pave it at his expense.

On Wednesday May 28, 1969, Judge Jenifer found that Norris Lane was a public road and the next day ordered the Director of the County Department of Public Works and the County Health Officer to approve Tyler's application, and ordered the Director of the Department of Permits and Licenses and Baltimore County to issue the permit sought by the application.

On Monday June 2, Tyler sought to pick up the permit. The County refused to issue it. Later that day Tyler's lawyer wrote the County Solicitor that the County had no right to withhold the permit and that he and Tyler would appear on Wednesday at 10:00 a.m. to receive the permit. The letter warned the Solicitor that if the County again refused to issue the permit the appropriate County officials would be cited for contempt. On Tuesday the defendants moved for a new trial or reargument and further moved that since the order of the pre-

vious Thursday was a judgment *nisi* the order of Thursday, May 29, should be stayed until final adjudication and final judgment. On Wednesday morning, June 4, the County refused to issue the permit, and that afternoon the County Council met in emergency session and passed Bill 103, which provided in Section 1 (a) that "No permit for the disposal of refuse * * * shall be issued for a period of 90 days * * *," and in Section 1 (b) that:

> "Any such permit which has been issued but not yet utilized shall be and it is hereby suspended for a period of 90 days after this section is enacted."

The same Wednesday Tyler petitioned the court to find in contempt the Director of Public Works, the Health Officer and the Director of the Department of Permits and Licenses for refusing to issue the permit, and to find the County Executive, Dale Anderson, in contempt for having "counselled, instructed or directed" the other officials not to comply with the writs of mandamus. The next day Tyler petitioned the court also to find in contempt the five councilmen who passed Bill 103 for abusing their delegated legislative powers in that the bill "was passed solely for the purpose of frustrating the Order * * * dated May 29, 1969, and preventing compliance with the writs of mandamus issued thereon * * *."

On July 9, Judge Jenifer granted the motions for summary judgment of those sought to be held in contempt and dismissed Tyler's two petitions, opining in the part of his opinion here pertinent that:

> "It is admitted by the pleadings in this case that when the plaintiff or his counsel went to the various County Officials to obtain their permit they were referred to the Solicitor's Office. The Deputy County Solicitor informed the plaintiff's counsel that the permit would not be issued and he was so advising the County officials.

For the reasons I have hereinbefore stated there is no doubt under the pleadings that all of the individual County Officials were relying upon the advice received from the Solicitor's Office.

"Now, is it true as has been cited by the plaintiff, and as was mentioned in the case of *Weaver v. State*, 244 Md. 640, that advice of counsel is ordinarily and generally no justification for failure to comply with a judicial command. The plaintiff also urges that the advice of the Solicitor is not binding on any County Official. However, when you have a Charter which tells a County Official that the solicitor is his legal adviser, it would be folly for him not to follow that advice. But what is more important this is a contempt proceeding against these individual County Officials. In other words, the plaintiff would have me find that these officials, wantonly and wilfully, without legal justification of any nature or kind, disregarded completely and failed and refused to honor a lawful Writ of this Court. The justification for which the County Solicitors gave for refusal to comply with the Writ immediately was because of the pendency of a motion for a new trial or re-argument, and this involved an interpretation of the various Maryland Rules, namely 564, 567 and the B.E. Rules pertaining to Mandamus. Whether or not the Solicitor was correct in his interpretation of those rules does not necessarily compel a decision by this Court with respect thereto. Assuming, without deciding, for the purposes of this case that the order of May 29th, 1969, was a final order and not an order nisi as contended by the County, the failure to comply extended over the period of less than three business days, namely Thursday, May 29th, Monday, June 2nd and Tuesday, June 3rd.

When the Council on June 4th, passed Bill No. 103, all of the individual County Officials were precluded and prevented from acting further with respect to the issuance of the permit requested. If they did so after that date they would be in direct violation of an ordinance passed by the legislative body.

"I am unable to find under these circumstances that these individual County Officials were contemptuous of this Court, but assuming that they were, under the legislative enactment which is now valid until declared invalid by a direct attack thereon, this Court is powerless to direct the issuance of the permit requested. Plaintiff's counsel urges the Court that, even at this time, it should require Mr. Kaltenbach as Director of Public Works and Dr. Roop as County Health Officer to approve the application for the permit under the provisions of Section 13-41 or 13-42 of the County Code. Such approval would be futile since that action is merely preliminary to the actual issuance of the permit. Approval without issuance is of no value to the plaintiff. Holding in contempt would likewise be of no benefit to the plaintiff in view of the subsisting and existing County ordinance."

We were told at the argument that after Judge Raine later refused to discipline Tyler for using the Norris Farm landfill site without a permit, the County publicly agreed that it would not interfere with its use by him and that he could continue to use it without interference by the County, at least until a new ordinance regulating sanitary landfills becomes operative in late November when the County will seek to require him to obtain the permit contemplated by that ordinance.

Tyler would have us direct the lower court to find that all the defendants were in contempt and to require the issuance of the permit nunc pro tunc as of June 2, 1969.

The County and its officials and councilmen urge that the appeal of one adjudged in contempt is the only appeal the law allows in contempt cases and moves us to dismiss Tyler's appeal.

We are persuaded that the motions to dismiss should be granted. The right of appellate review from a finding of contempt or a refusal to find contempt did not exist at all at common law. The theory was, essentially, that the power to punish for contempt was so absolutely essential to the functioning and, indeed, the existence of courts that to be effectual the power must be instantly available and inevitable to the point of not being subject to change. 4 Am.Jur.2d, *Appeal and Error* § 168; 17 C.J.S., *Contempt* § 112; *New England Novelty Co. v. Sandberg* (Mass.), 54 N.E.2d 915, 917:

> "Proceedings for contempt, whether brought for the purpose of compelling compliance with the orders or decrees of the court for the benefit of a plaintiff or for the purpose of inflicting punishment in the public interest upon one who has flouted the dignity and authority of the court, have always been considered as sui generis. Every court of superior jurisdiction has the inherent power to compel obedience to its decrees and to punish those who obstruct or degrade the administration of justice. At common law a higher court had no jurisdiction to review the proceedings of the court in which a judgment for contempt was entered";

*Masonite Corp. v. International Woodworkers* (Miss.), 206 So. 2d 171, 177. *See also* Moscovitz, *Contempt of Injunctions,* 43 Colum. L. Rev. 780. *Chambers v. State,* 3 Md. App. 642, 643, relied on *Kelly v. Montebello Park Co.,* 141 Md. 194, in holding that under the common law rule there is no right of appellate review in contempt cases, civil or criminal. The actual holding in *Kelly* was not this broad. It *held* that the contempt there involved was criminal and that there had been no relaxation in

Maryland of the rule that no appellate review was available in cases of criminal contempt. *Kelly* can be read to *say* that the common law rule is the Maryland rule and as engaging in a somewhat vague and rambling discussion not necessary to the holdings made that generally there is more relaxation of the rule in cases of civil contempt than in criminal and that perhaps some cases of civil contempt might be reviewable in Maryland. For background material, see *State v. Stone*, 3 H. & McH. 115, and *Ex Parte Maulsby*, 13 Md. 625.

The strict common law rule has been relaxed in most jurisdictions by constitutional and statutory provisions. Following the decision in *Ex Parte Sturm*, 152 Md. 114, where the Court held that a judgment imposing a fine for criminal contempt in violating an order within the power of the Court to make was not appealable, since no statute removed the common law bar to appellate review in such case, the legislature by Ch. 357 of the Laws of 1927 enacted what is now Code (1968 Repl. Vol.), Art. 5, § 18, titled "Appeals in Contempt Cases," to provide that "Any person may appeal to the Court of Appeals from any order or judgment passed to preserve the power or to vindicate the dignity of the court and adjudging him in contempt of court." By Ch. 593 of the Laws of 1927, the legislature added to the law what is now Code (1968 Repl. Vol.), Art. 5, § 7 (e) (under "Appeals from Certain Interlocutory Orders") to provide that:

> "Any party may appeal to the Court of Appeals fom any of the following interlocutory orders entered or actions of a court of equity:
> * * *
> "(e) An order, remedial in its nature, adjudging in contempt of court any party to a cause or any person not a party thereto, except orders entered requiring the payment of alimony."

Our view is that ordinarily these two statutes offer

the only right in Maryland to appellate review in cases of either civil or criminal contempt, and they offer the right only to those adjudged in contempt, not to those who unsuccessfully seek to have another held to be contemptuous.

There may be occasional instances in which the order imposing the punishment for civil contempt or refusing to impose the order for civil contempt is so much a part of or so closely intertwined with a judgment or decree which is appealable as to be reviewable on appeal as part of or in connection with the main judgment, as in *Williamson v. Carnan*, 1 G. & J. 184, and *Longley v. McGeoch*, 115 Md. 182 (in which no point was made as to the right to appeal; *cf. Emergency Hospital v. Stevens*, 146 Md. 159, 164-165). If it be assumed that at one point in the present case civil contempt could have been found, the case before us is not of that kind; indeed it seems to be in its present posture only a potential case of criminal contempt. As we noted in *Sheets v. City of Hagerstown*, 204 Md. 113, 120: "The line between civil and criminal contempt is often indistinct. Often the same acts or omissions may constitute both or at least embrace aspects of each." If the simple standard test (if the contempt order is coercive in order to remedy the contemptuous act or omission, the contempt was civil, if it is punitive the contempt was criminal, *Kelly v. Montebello Park Co., supra;* Moscovitz, *Contempt of Injunctions*, 43 Colum. L. Rev. 780, *supra*) is used it would appear that had Judge Jenifer found against the County officials they would have been guilty of criminal contempt. The councilmen could not be coerced by the court to legislate; at the conceivable most, they could only be punished for having legislated. As long as Bill 103 was law—and it remained unimpeached for its ninety-day life—the County officials could not be coerced to grant a permit, they could only be punished for not having granted one before the passage of Bill 103.

The court below had jurisdiction of the subject matter and the parties (if it had not had, a right to appel-

late review might have arisen). Since no statute or rule of law grants a right of appellate review from its action 'in denying Tyler's request to find antagonists in contempt—an action it was lawful and permissible for it to take, where it was right or wrong in so doing—the appeal will be dismissed.

*Appeal dismissed, with costs.*