## LUCIAN T. JONES *v.* LAWRENCE WRIGHT ET UX.

[No. 656, September Term, 1976.]

*Decided March 15, 1977.*

The cause was argued before GILBERT, C. J., and THOMPSON and MELVIN, JJ.

*William H. Pattison, Jr.,* with whom was *Conrad L. McCulley* on the brief, for appellant.

No appearance for appellees.

THOMPSON, J., delivered the opinion of the Court.

After a determination that the appellant, Lucian T. Jones, had obstructed an easement in violation of an earlier court decree, Judge Charles E. Edmondson, presiding in the

Circuit Court for Dorchester County, found the appellant in contempt of court. The appellees were awarded $500.00 in damages and costs. On this appeal Jones contends the trial court erred in finding him in contempt, in awarding damages, and in holding him in continuing contempt.

On August 17, 1970, the late Judge C. Burnam Mace, presiding in the Circuit Court for Dorchester County, found that a roadway which leads northwestward from the Lucy Fish Road to the Williamsburg Road, in the Hurlock Election District of Dorchester County, and crossing the properties of the appellant, the appellees, and a third party, had been used by the Wrights or their predecessors in title continously, adversely, uninterruptedly and exclusively since 1908. He further determined that a prescriptive easement existed in favor of the Wrights over "a strip which is ten feet in width and runs between the Lucy Fish Road northwest to the Williamsburg Road." Mr. Jones was "enjoined from closing or in any way obstructing that right of way, easement, or roadway."

At the hearing on this contempt petition, appellee Lawrence Wright testified that subsequent to Judge Mace's order, the appellant had planted two wooden posts at different points in the middle of the road. While it was possible to drive around these posts, in order to do so one would have to leave the path of the original road. At another point in the road, the appellant bulldozed dirt over an approach to a ditch, which in effect blocked the road because it created a drop of three feet. At the same time, the appellant erected a new bridge over the ditch on his own property. The effect of this was that the original road became overgrown with brush, but a travelable by-pass was created over the property of the appellant, outside of the easement. When one of the appellees attempted to drive over the ditch, by means of the new by-pass, the appellant blocked his path and told him that the new overpass was private property.

During the course of the proceedings the trial judge recessed, in order to view personally the property in question. After court was reconvened, the appellant agreed

to remove the two wooden posts, to level the approach to the crossover within the right-of-way, and restore that portion of the road to the condition it had been prior to the construction of the by-pass. The case was continued in order to allow these repairs to be made.

When the proceedings were reconvened, the appellant testified that he had removed the two wooden posts, leveled the crown off the approach to the ditch, cleared some of the brush, and filled a hole in the road. He stated that the original road had become obstructed as a result of the failure of the appellees to maintain it properly. He admitted that the road was still in poor condition, but asserted that this was a result of a heavy rainstorm which had occurred in the last week. Regardless of the rain, the road was in the same condition as it had been at the time he constructed the by-pass.

The court found that the appellant had obstructed the road. While the situation concerning the posts had been remedied, a vehicle could not cross the ditch without striking its undercarriage. The appellant was, therefore, found in contempt for violating the 1970 decree, and damages in the amount of $500 were awarded to the appellees.

## I Sufficiency of the Evidence

We view the appellant's first contention, that the trial court erred in finding the appellant in contempt, as a challenge of the sufficiency of the evidence. At the outset, we point out that the trial court found that because the posts had been removed they did not form a basis for his finding of contempt. The reason the appellant was found in contempt was that the ditch had been passable before the appellant had taken certain steps which obstructed it, and that this crossover was still unusable. As the testimony of both the appellant and the appellee place the original crossover in the same place, the location of the right-of-way is not in question. Although Mr. Jones testified that he had restored the right-of-way to the same condition that existed when he built the by-pass, there was a showing that this

portion of the road was still not usable. Mr. Wright testified that that portion of the road was passable before the appellant obstructed it with his bulldozer. In other words, there was evidence to support the trial judge's finding that the appellant had obstructed the road in violation of the 1970 order, rendering it unusable, and it has remained unusable. The trial judge was not clearly erroneous in this finding that appellant violated the court order and had not remedied the situation. Md. Rule 1086.

## II Damages

Appellant's second contention is that the trial court had no power to award compensatory damages in a civil contempt proceeding as prayed in the petition for a contempt citation. There is no question that the appellant was found in civil as opposed to criminal contempt. A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. In a criminal contempt, on the other hand, penalty is imposed for past misconduct which may not necessarily be capable of remedy. *State v. Roll and Scholl,* 267 Md. 714, 728, 298 A. 2d 867 (1973). The five basic factors which generally point to civil contempt were delineated in *Winter v. Crowley,* 245 Md. 313, 226 A. 2d 304 (1967).

> "(1) the complainant is usually a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion." *Id.* at 317.

The case at bar meets each of these factors.

Authorities on the question of whether compensatory damages may be granted in favor of the adverse party in contempt proceedings seem to be in disagreement around the country. In the federal courts compensatory damages may be granted upon a finding of civil contempt. *United States v. United Mine Workers*, 330 U. S. 258, 304, 67 S. Ct. 677, 701, 91 L. Ed. 884 (1947); *Gompers v. Buck's Stove & Range Company*, 221 U. S. 418, 31 S. Ct. 492, 502, 55 L. Ed. 797 (1911); *Shakman v. Democratic Organization of Cook County*, 533 F. 2d 344, 349 (7th Cir. 1976); *Thompson v. Johnson*, 410 F. Supp. 633, 642 (E.D. Pa. 1976); *Gordon v. SS Vedalin*, 346 F. Supp. 1178, 1183 (D. Md. 1972). A majority of the states also allow compensatory fines payable to the injured party. These states are divided into two categories. On the one hand are those states which have statutes which specifically authorize compensatory fines for civil contempt. *Getka v. Lader*, 71 Wis. 2d 237, 238 N.W.2d 87 (1976). On the other hand are those states whose statutes are silent, but hold that in the absence of a statutory prohibition, the power to assess compensatory fines is inherent in the court whose decree has been violated. *City of Wilmington v. General Teamsters Local Union 326*, Del. Supr., 321 A. 2d 123 (1974). *Hawaii Public Employment Relations Board v. Hawaii State Teachers Association*, 520 P. 2d 422 (Haw. 1974); *Bata v. Central-Penn National Bank of Philadelphia*, 448 Pa. 355, 293 A. 2d 343 (1972); *Brocker v. Brocker*, 429 Pa. 513, 241 A. 2d 336 (1968). *See also Lightsey v. Kensington Mortgage and Finance Corp.*, 315 So. 2d 431 (Ala. 1975) where compensatory fines are permitted but after a finding of contempt by the trial court a jury is impaneled to determine the damages.

In those states whose statutes are silent as to compensatory fines and that silence is interpreted as a prohibition of such power the reasoning is twofold. The first theory is that if damages are sought then the proper forum is a suit at law seeking those damages, not a contempt proceeding. Secondly, it is expressed that the purpose of contempt proceedings is to coerce compliance with the

original order, and not to substitute additional relief. *Elliott v. Burton*, 19 N.C. App. 291, 198 S.E.2d 489 (1973); *United Artists Records, Inc. v. Eastern Tape Corp.*, 18 N.C. App. 183, 196 S.E.2d 598 (1973); *Eberle v. Greene*, 71 Ill. App. 2d 85, 217 N.E.2d 6 (1966); *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963); *H. J. Heinz Co. v. Superior Court*, 42 Cal. 2d 164, 266 P. 2d 5 (1954).

In Maryland the power of a court to compel compliance with its mandates is statutorily expressed. See Md. Rules 636, 685, P 1-5, BB 80 and Courts and Judicial Proceedings Article § 1-202. None of these, however, either affirm or deny the power of the court to impose damages payable to the injured party.

The Maryland Court of Appeals distinguished civil and criminal contempt recently in *State v. Roll and Scholl, supra* at 727-728:

> "At common law what in Maryland is now regarded as civil contempt probably did not exist; but rather, a process which was employed as a procedure for civil execution was used as a sanction against a party who disobeyed a court order issued for the benefit and advantage of another party in the proceedings.[10] Through the years, civil contempt was substituted for civil execution, and now, in most jurisdictions, civil and criminal contempt are the composite parts of the whole law of contempt, although historically they are derived from a different lineage.

> "Today, the line between civil and criminal contempt is frequently hazy and indistinct. Often the same acts or omissions may constitute or at least embrace aspects of both. *Tyler v. Baltimore County*, 256 Md. 64, 259 A. 2d 307 (1969). When this is the case, an alleged contemnor may be answerable in either a civil or criminal contempt proceeding. But, in this State, the distinction between the two types of contempt has been preserved and is important. A civil contempt

proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are *generally* remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive." (Emphasis added).

"10. *See* R. Goldfarb, *The Contempt Power,* Ch. II (1963)."

There is clear indication, however, in one case that Maryland follows the federal and the majority rule and gives courts the power to award a compensatory fine in the nature of damages. In *Save-Mor Drugs v. Upjohn Co.,* 225 Md. 187, 170 A. 2d 223 (1971), the Court of Appeals recognized that a trial judge could award damages for past violations of a temporary injunction if the injunction is ultimately sustained:

"The rule was flatly stated to be well established as applicable in civil as well as in criminal contempt cases in *Salvage Process Corp. v. Acme Tank Cleaning Process Corp., supra,* 86 F. 2d 727 (C. C. A., 2d, per curiam), but the practical limitation of the rule is also well shown by that case. There the defendant had been fined (or subjected to an award in favor of the plaintiff) in civil contempt proceedings for violation of a temporary injunction, the fine or award being (as in the instant case) for the plaintiff's expenses in the contempt proceedings. In a companion case, decided by the Circuit Court of Appeals the same day as the contempt case, the patents upon which the plaintiff's suit was based were held invalid and the order for the temporary injunction was therefore

reversed. It was held in the contempt case that the plaintiff's right to the fine or award fell with the reversal of the injunction order.

"The result in the *Salvage Process* case is in accord with the general rule that the right of the complainant to an award for civil contempt in the nature of damages stands or falls with his right to the injunction." *Id.* at 191-192.

In the case at bar the right to the injunction became final several years ago and is not now subject to attack.

The reasoning behind the rule which allows a court to impose compensatory damages to remedy contemptuous conduct is sound. It seems to us that the court which imposes the order should have the right to fully enforce it. To hold that the injured party must resort to a different court to enforce his judicially determined rights, where a respondent has violated an order of court, is to require two trials instead of one. In short, we see no reason in law or justice to require such a duplication of legal proceedings. Of course, the damages must be based on actual loss of the complainant; here there is no challenge as to the amount of the damages.

### III  Continuing Contempt

Appellant's final contention is that the trial court erred in holding him in continuing contempt until the $500 damages and the costs of court are paid. This question is not properly before us because, although the trial judge's comments from the bench indicated the order for payment of the money might be enforced by imprisonment, the written order provided only for a money judgment. An equity court acts only by written orders. *Kennedy v. Foley, Receiver,* 240 Md. 615, 214 A. 2d 815 (1965); *Sellman v. Sellman,* 238 Md. 615 209 A. 2d 61 (1965).

*Decree affirmed.*
*Appellant to pay costs.*