739 A.2d 893

**John W. HERMINA**

v.

**BALTIMORE LIFE INSURANCE COMPANY, et al.**

No. 1807, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Oct. 27, 1999.

**570**

Albert D. Brault (Brault, Graham, Scott & Brault, LLC, on the brief), Rockville, for appellant.

David W. Erb (Saul, Ewing, Weinberg & Green, Baltimore and Barrett W. Freedlander, Owings Mills, on the brief), for appellees.

Argued before THIEME, SONNER and THEODORE G. BLOOM (Retired, specially assigned), JJ.

THEODORE G. BLOOM, Judge (Retired, Specially Assigned).

This appeal by John W. Hermina is from an order of the Circuit Court for Baltimore County finding him guilty of direct civil contempt of court and imposing a sanction of $8,500, with a provision that the contempt may be purged by paying $8,500 to Barrett W. Freedlander, Esquire, on or before 28 August 1998.

The direct contempt found by the court was the failure of appellant, who was the attorney of record for Adel Alalfey and David Griggs, two of the defendants [1] in a civil action brought by appellees, Baltimore Life Insurance Company and Life of

---

**1.** The other defendant, Southwestern Life Insurance Company, entered into a settlement agreement with Baltimore Life and is not involved in these proceedings.

Baltimore, Inc. (collectively, Baltimore Life), to appear for trial on 15 April 1998. On 23 April, Mr. Freedlander and another member of his law firm, who were counsel for Baltimore Life in the suit against Alalfey, et al., filed in those proceedings a Motion for Sanctions, asserting that appellant was guilty of criminal contempt and asking for an award of sanctions against appellant in the amount of $8,500. The motion was accompanied by a lengthy memorandum, which contained derogatory allegations about appellant's conduct in proceedings totally unrelated to the case at hand.

Appellant's response to the Motion for Sanctions and supporting memorandum contained a personal attack on Mr. Freedlander's conduct in various cases. It also denied any contumacious intent by appellant and set forth an exculpatory explanation for his failure to appear in court on 15 April 1998.

There was no order issued by the court directing appellant to appear at a date and time certain to show cause why he should not be found to be in contempt and be punished therefore. On 29 July 1998, there was a hearing on pending motions, which included certain motions filed by the defendants, along with appellees' Motion for Sanctions. At that hearing, the court first addressed and disposed of the defendants' motions by denying all of them, after which the court took up appellees' Motion for Sanctions.

Counsel appearing for appellant on appellees' Motion for Sanctions addressed the court and outlined appellant's explanation for his failure to appear on 15 April. The scheduled trial date was 14 April. On 13 April, in a telephonic conversation with someone in the assignment office, appellant was advised that the case would not be tried on the 14th, because there were no judges available. On the basis of that information, appellant, who was ill, went home. Counsel denied the allegation of appellees' attorney that appellant was told to call the assignment office before 4 p.m. the next day to learn of the trial status. Appellant never received word that the case was reset for trial on 15 April. Counsel presented a note from appellant's doctor, which stated that he saw appellant on 13

April and treated him for bronchitis on that day, and he also saw and treated appellant for an ear condition on 16 April.

The court next took testimony from Linda Hopkins, the Assistant Director for the Central Assignment Division of the Court. Ms. Hopkins testified that her notes reflected that she telephoned appellant's office on 13 April 1998 and, because appellant was not available, she told a secretary that there was no judge available to start the trial on the 14th and explained the court's procedure in such cases. Her notes reflected that Mr. Hermina called her back later in the day, and she repeated the procedure to him, as follows:

> When we don't have a Judge to start the case, we can tell them that the case had to go on standby. We request the attorneys stay in the office and notify their client and any witnesses and tell them not to come into court and to please be available if we need to call. And we tell them, if you don't hear from us by noon, they are to call our office at four o'clock the next day to see if it would be on the assignment for the following day. We tell everybody this. And that we would allow an hour travel time.

On cross-examination, Ms. Hopkins admitted that she was unaware that appellant's brother was his partner, so that, when she received a call from Mr. Hermina on the 13th, she assumed she was speaking to appellant.

Appellant then testified. His recollection conflicted with Ms. Hopkins's testimony. He said that he called the assignment office on the 13th to report that he was sick and to ask about the procedure followed by the court. He was told that for lack of a judge to begin the trial on the 14th the case was on standby. He understood that he would be notified when the case was reset for trial. He never received notice that the case was set for trial on 15 April. He stated that, in any event, he was too ill to appear on the 15th. He assured the court that he had not intended any disrespect.

There was also testimony from J. Joseph Curran, III, another attorney involved in the case, to the effect that appellant's brother, in a telephone conversation on 14 April,

told him that appellant was in the Circuit Court for Baltimore County. George Hermina, appellant's brother, then testified. He admitted that in his conversation with Mr. Curran on 14 April he indicated that his brother might be at the courthouse in Towson. He also admitted that he did not tell Mr. Curran that appellant was ill, because he did not want his brother to be harassed at home by appellees' attorneys. He assumed that, if it were important and the judge wanted to get in touch with appellant, he would get a call from the judge's office.

At the conclusion of all the testimony, the judge found appellant guilty of direct civil contempt, which could be purged by paying $8,500 to Mr. Freedlander, that sum being the amount of expenses that he had incurred or would incur "as outlined on Page six of his memorandum in support of his Motion for Sanctions." The judge also found "beyond a reasonable doubt that Mr. Hermina has the ability to pay $8,500," and that those expenses were reasonable. A written Order of Contempt was later filed, along with his "decision," or comments. At appellant's request, those comments were sealed.

## DISCUSSION

Appellant presents the following assertions of error:

I. The court did not follow appropriate procedures as mandated by the rules in holding the attorney in contempt.

 A. The court was in error in allowing a motion by a party to seek a finding of direct and criminal contempt.

 B. The court was in error in finding a direct civil contempt.

 C. The court was in error in not requiring notice to the alleged contemnor as to whether the court was considering civil or criminal, direct or constructive contempt.

D. When the Movant called upon the court to consider his personal knowledge, the court was in error in not recusing himself and referring the hearing to another judge.

E. The court was in error in failing to specify the evidentiary facts known to the court and any other evidentiary facts not so known in the written order which formed the basis of the court's finding.

II. The court was in error in considering statements in motions and other evidence that had nothing to do with the attorney's failure to appear for trial.

III. The disdain that the court demonstrated in finding the attorney in direct civil contempt demonstrates bias, anger, or an emotional response such that the judge should have recused himself and referred the hearing to another judge.

IV. The court was in error in the finding of the amount of attorneys' fee that constituted the sanction.

Appellees, in addition to responding to appellant's assertions of error, contend that the appeal should be dismissed because appellant did not appeal in his own name. We shall address that contention first, before proceeding to consider appellant's complaints.

### I.

The Notice of Appeal filed by appellant was "as to all rulings made by [the presiding judge], including those made on or about July 29, 1998 and including those rulings relating to civil contempt in the above captioned case." It was signed:

Respectfully Submitted,

The Plaintiff,

By [*signature*]

John W. Hermina

The rulings adverse to appellant's clients, Messrs. Alalfey and Griggs (who were defendants, not "Plaintiff"),

were interlocutory and, therefore, not appealable. The contempt judgment against Mr. Hermina, however, was a final and appealable judgment.

At common law, there was no right of appeal in contempt cases. *Harford County Education Association v. Board of Education*, 281 Md. 574, 380 A.2d 1041 (1977); *Tyler v. Baltimore County*, 256 Md. 64, 259 A.2d 307 (1969). By statute (Maryland Code (1974, 1998 Repl.Vol.), § 12–304(a) of the Courts and Judicial Proceedings Article (C.J.)), however

> [a]ny person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interlocutory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action.

Appellees correctly point out that the statutory right to appeal from a contempt judgment is conferred on the person adjudged to be in contempt, and that Mr. Hermina did not appeal in his own name; he signed the notice of appeal only as counsel for his clients, who have no standing to appeal their attorney's adjudication of contempt. Nevertheless, the notice of appeal, despite its defects, specifically stated that the adjudication of contempt was being appealed, together with other rulings in the case that were not appealable. As the Court of Appeals pointed out in *Newman v. Reilly*, 314 Md. 364, 383, 550 A.2d 959 (1988), "[t]he Maryland Rules do not regulate the content of an order for appeal to the Court of Special Appeals."

In *Newman v. Reilly*, the Circuit Court for Washington County, after dismissing a medical malpractice action brought by Luke R. Reilly against Dr. George C. Newman, II, and others, granted Dr. Newman's motion for sanctions, pursuant to Md. Rule 1–341, finding that the claim had been filed without substantial justification. The court entered separate judgments against Reilly and his attorney, Daniel M. Zerivitz, in the amount of $10,583 each. Mr. Zerivitz filed an order of appeal in the following language:

Please enter an appeal on behalf of the Plaintiff to the Court of Special Appeals from the Judgment, in the above captioned matter, in favor of the Defendant[.]

*Id.* at 382, 550 A.2d 959.

This Court held, *inter alia,* that the appeal in that case was an appeal on behalf of Reilly only, and was not an appeal of the separate judgment against Zerivitz. The words in the order for appeal, "on behalf of the Plaintiff," and "Judgment," were interpreted by this Court as words of limitation that circumscribed the scope of a timely (and as seen by the Court of Appeals, a meritorious) appeal.

The Court of Appeals, reversing this Court on that point, held that the right of an attorney sanctioned under Md. Rule 1–341 to appeal is as a "party," under C.J. § 12–301, which provides that "a party may appeal from a final judgment entered in a civil ... case by a circuit court," except as provided in § 12–302. The language regarded by this Court as limiting the appeal to the judgment against the plaintiff, Reilly, was deemed by the Court of Appeals to be gratuitous surplusage. The Court noted that,

[i]f Zerivitz had signed, as attorney for the plaintiff, a paper reading, "Please note an appeal to the Court of Special Appeals" and the paper were filed within thirty days of the entry of the sanctions judgments, the legal effect would have been to bring up for appellate review all appealable judgments in the case.

314 Md. at 383, 550 A.2d 959.

The Court stated, "Our cases, and those of the Court of Special Appeals, have generally been quite liberal in construing timely orders for appeal." *Id.* at 386, 550 A.2d 959. After reviewing a few of such cases, the Court commented:

The philosophy of these cases is also reflected in the Notes of the Advisory Committee on the Federal Rules of Appellate Procedure, 1979 amendment, Note to Rule 3, subdivision c:

"Because of the fact that the timely filing of the notice of appeal has been characterized as jurisdictional ... it is

important that the right to appeal not be lost by mistakes of mere form. In a number of decided cases it has been held that so long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with."

*Id.* at 387–88, 550 A.2d 959.

Adopting the reasoning of *Newman v. Reilly, supra,* and the "liberal" philosophy embraced therein, we hold that the notice of appeal filed by Mr. Hermina in this case was sufficient to constitute an appeal by him from the contempt judgment. It was timely filed; he had a right to appeal under C.J. § 12–304(a); and if he had merely signed and filed a paper stating, "Please note an appeal to the Court of Special Appeals," the legal effect of that paper would have been to bring up for appellate review the sole appealable judgment in the case. We shall treat the rest of the language in his order of appeal as surplusage that did not limit or circumscribe the scope of the appeal.

## II.

We need not address all of appellant's assertions of error. He contends, and we agree, that the lower court did not follow appropriate procedures in holding him in contempt. For that reason, we shall reverse the judgment of the circuit court.

 A contempt may be either direct or constructive and either civil or criminal. Consequently, a contempt may be direct and civil, or direct and criminal, or constructive and civil, or constructive and criminal. Under which of those classifications a contempt falls may be of the utmost importance, but the proper classification may be difficult to discern. *Pearson v. State,* 28 Md.App. 464, 481, 347 A.2d 239 (1975). The line between civil and criminal contempt is often indistinct; the same act may constitute both or at least embrace aspects of both. *Tyler v. Baltimore County, supra.* Md. Rule 15–202, however, provides the following definitions of constructive and direct contempts:

(a) *Constructive contempt.* "Constructive contempt" means any contempt other than a direct contempt.

(b) *Direct contempt.* "Direct contempt" means a contempt committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings.

A direct contempt, either civil or criminal, may be summarily punished by the court against which the contempt has been committed if (1) the contempt has interrupted the order of the court and interfered with the dignified conduct of the court's business, and (2) the presiding judge has personally seen, heard, or otherwise perceived the contemptuous conduct and has personal knowledge of the identity of the person who committed it. Md. Rule 15–203(a). An attorney's unjustified failure to attend court at the time appointed is misbehavior by an officer of the court and is punishable as contempt. *Kandel v. State,* 252 Md. 668, 250 A.2d 853 (1969); *Murphy v. State,* 46 Md.App. 138, 416 A.2d 748 (1980). Since such contempt is committed in the presiding judge's presence and disrupts the scheduled proceedings before the court, it may be punished summarily. *Kandel v. State, supra; Murphy v. State, supra.*

Summary contempt proceedings, however, "are only proper in cases where the action of the alleged contemnor poses an open, serious threat to orderly procedure that instant, and summary punishment, as distinguished from due and deliberate procedures, is necessary." *State v. Roll and Scholl,* 267 Md. 714, 733, 298 A.2d 867 (1973). If an attorney disrupts the orderly proceedings by arriving late, summary punishment may be imposed immediately upon his arrival, as it was in *Kandel.* But if, as in this case, the attorney fails to appear and the trial is simply postponed, there is no need for summary punishment.

The rules of procedure do not attempt to define civil contempt and criminal contempt or to distinguish between them. In *State v. Roll and Scholl, supra,* the Court of Appeals, after briefly summarizing the historical development of the law of contempt, explained:

Today, contempts are classified as civil or criminal and at least in theory either of these may be direct or constructive. The various categories are not mutually exclusive and in fact the nomenclature assigned to a contempt involves both classes, *e.g.*, a constructive civil, or a direct criminal contempt. Historically, criminal contempts were positive acts which offended the dignity or process of the court. Holding an offending party in contempt of court was designed to vindicate the authority and power of the court and punish disobedience to its orders. The people were considered as the real interested parties to prosecution and the State was generally the prosecutor. . . .

Today, the line between civil and criminal contempt is frequently hazy and indistinct. Often the same acts or omissions may constitute or at least embrace aspects of both. *Tyler v. Baltimore County*, 256 Md. 64, 259 A.2d 307 (1969). When this is the case, an alleged contemnor may be answerable in either a civil or criminal contempt proceeding. But, in this State, the distinction between the two types of contempt has been preserved and is important. A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt—a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt.

*Id.* at 727–28, 298 A.2d 867. (Citations omitted.)

It would seem, from the above quoted language in *Roll and Scholl*, that an attorney's unexcused failure to appear for the

scheduled trial of a case in which he is counsel for one of the parties is a criminal contempt. It offends the process of the court, and punishment for it tends to vindicate the authority and power of the court rather than to compel future obedience to an order or decree primarily made to benefit a party or parties to a case. Certainly, as their titles clearly indicate, *Kandel v. State* and *Murphy v. State* were direct criminal contempt cases.

There is, however, other language in *Roll and Scholl* that casts some doubt on the above quoted description of the distinguishing characteristics of civil contempt. The Court referred to Judge Barnes's opinion in *Winter v. Crowiey*, 245 Md. 313, 226 A.2d 304 (1967), which "delineated the basic criteria applicable in this State for determining if a proceeding was for civil contempt." The Court stated that

[t]he five factors which generally point to a civil contempt are:

"(1) the complainant is usually a private person as op- posed to the State; (2) the contempt proceeding is enti- tled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion." [245 Md.] at 317 [226 A.2d 304].

267 Md. at 729–30, 298 A.2d 867.

Appellees' motion for sanctions asserted that appellant's failure to appear for trial was a criminal contempt that was summarily punishable because it was committed in the pres- ence of the court. The relief sought by appellees, however, was civil in nature: reimbursement for the costs and damages they (or their attorneys) sustained as a result of the postpone- ment of the trial necessitated by appellant's failure to appear. The court undertook to punish appellant in a summary man-

ner for a *direct civil contempt* by imposing a "sanction" in the amount of $8,500, which could be purged by paying $8,500 to Mr. Freedlander on or before 30 July 1998.

Appellant contends that it was error for the court below to allow a motion by a party to seek a finding of direct criminal contempt. The court, however, found that appellant had committed a direct civil contempt, and so formulated the judgment that it conforms to the basic criteria delineated by Judge Barnes in *Winter v. Crowley, supra:*

> (1) The complainants in this case were private parties, appellees, rather than the State;
>
> (2) the complaint was filed in the original action and not brought as a separate and independent action;
>
> (3) the relief requested was for the benefit of the complainants, which sought reimbursement for costs and damages allegedly sustained when the trial was postponed because the defendants' attorney failed to appear;
>
> (4) by imposing a monetary penalty that could be purged by paying an equal amount of money to appellees' counsel, the court granted the relief requested by appellees; and
>
> (5) the acts complained of did not constitute crimes or such contumelious conduct as to impel the court to act on its own motion.

We need not decide whether a circuit court can determine that conduct that on its face amounts to criminal contempt is civil contempt and conform the proceedings to fit the basic criteria of civil contempt by (1) proceeding on a motion filed in the underlying civil case by a party to that case and (2) fashioning a sanction designed to benefit the moving party. Whether the alleged contempt was civil or criminal, the proceedings were fatally flawed because the court sanctioned appellant for a direct contempt as if it were conducting a summary contempt proceeding. Appellant asserts that the court erred in treating the matter as a *direct* contempt, pointing to the fact that the judge was not personally aware of all the facts and had to take extrinsic evidence relating to the reasons for appellant's failure to appear for trial. He refers to

our recent case of *Scott v. State,* 110 Md.App. 464, 480, 677 A.2d 1078 (1996), in which we reversed a summary conviction and sentence for criminal contempt because it was necessary for the judge to look at extrinsic evidence to determine whether a contempt had been committed, *i.e.,* whether the alleged contemnor had lied to the judge when he told the court that he had mailed a certain document. We said:

> Under prevailing case law interpreting the meaning of "in the presence of the court, or so near to the court as to interpret its proceedings," a contempt is not direct if the trial judge does not have personal knowledge of all of the relevant facts; in such a case—where the judge must look at extrinsic evidence to determine that a contempt has been committed—the contempt is constructive rather than direct.

In this case, as in *Kandel* and *Murphy,* where attorneys did appear in court on the scheduled date, but late, the misconduct constituting a contempt—the failure of the attorney to appear in court at the appointed time on the appointed date—occurred within the sensory perception of the presiding judge, who was aware of the date and time set for trial and the fact that Mr. Hermina was not there. The judge did not have to rely on other evidence to establish those details, although, as pointed out in *Roll and Scholl,* 267 Md. at 734, 298 A.2d 867, "some of them can be supplied by additional testimony" in a direct contempt proceeding. The evidence received by the court in this case related to the reasons for appellant's failure to appear. In his answer to appellees' Motion for Sanctions, Mr. Hermina provided an exculpatory explanation, and he was permitted to give testimony tending to show that his absence from court on the scheduled trial date was the result of a misunderstanding and, therefore, not contumelious. The court also heard evidence that contradicted appellant's exculpatory explanation. Even in a summary proceeding for a direct contempt, the alleged contemnor must be given an opportunity to present exculpatory or mitigating evidence, *Roll and Scholl,* 267 Md. at 732–33, 298 A.2d 867; *McMillan v. State,* 258 Md. 147, 153, 265 A.2d 453 (1970); and if he does so, it is entirely proper for the court to receive

contradictory evidence. The reception of such evidence is not inconsistent with the concept of a direct contempt.

 The procedural error in this case was the court's treatment of the proceedings as if it were conducting a summary proceeding for imposition of a penalty or sanction for a direct contempt. As indicated above, we hold that Mr. Hermina's failure to appear in court on the date set for trial of his clients' case, without an exculpatory reason accepted by the court, was a direct contempt. But since the court postponed the trial because the defendants' attorney was absent, there was no need or reason for a summary proceeding to "restore order and maintain the dignity of the court."

In *State v. Roll and Scholl, supra,* the Court of Appeals noted:

> The United States Supreme Court has often expressed the opinion that a summary contempt proceeding should be the exceptional case. Such proceedings are only proper in cases where the action of the alleged contemnor poses an open, serious threat to orderly procedure that instant, and summary punishment, as distinguished from due and deliberate procedures, is necessary. In other words, direct contempt procedures are designed to fill the need for immediate vindication of the dignity of the court. *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.[2d] 240 (1965); *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). As the Supreme Court stated in *Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971), "instant action may be necessary where the misbehavior is in the presence of the judge or is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court." But, it is recognized that at times immediate action taken against an attorney guilty of contempt is likely to prejudice his client. If this is the case, it is best to wait until the end of the trial and a more. deliberate path

followed. *Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

267 Md. at 733, 298 A.2d 867.

In this case, the judge might have issued a bench warrant to have Mr. Hermina brought before him forthwith, if possible, for a summary contempt proceeding. He chose not to do so and postponed the trial instead. Even then he did not initiate contempt proceedings. Instead, appellees initiated them with a Motion for Sanctions designed to recoup expenses they had incurred or would incur as a result of appellant's failure to show up for trial. That motion, along with other pending motions, was then routinely set in for a hearing. The court thereby opted not to attempt to impose sanctions summarily.

Maryland Rule 15–204 covers situations in which a direct contempt is not summarily sanctioned. It provides:

**Rule 15–204.** *Direct Contempt if no summary imposition of sanctions.*

In any proceeding involving a direct contempt for which the court determines not to impose sanctions summarily, the judge, reasonably promptly after the conduct, shall issue a written order specifying the evidentiary facts within the personal knowledge of the judge as to the conduct constituting the contempt and the identity of the contemnor. Thereafter, the proceeding shall be conducted pursuant to Rule 15–205 or Rule 15–206, whichever is applicable, and Rule 15–207 in the same manner as a constructive contempt.

Rules 15–205, 15–206, and 15–207 set forth at considerable length the exact and precise procedures to be followed in every constructive contempt case, civil as well as criminal, and in every direct contempt case, such as this one, in which the contemnor is not summarily sanctioned. None of them was followed in this case.

Rule 15–205 provides, *inter alia,* that a proceeding for constructive criminal contempt is to be docketed as a separate criminal action and shall not be included in the action in which the alleged contempt occurred; that the proceeding may be initiated by the offended court by filing an order directing the

issuance of a summons or warrant, or by the State's Attorney when the contempt is committed against a trial court, or by the Attorney General if the contempt is committed against an appellate court (or in certain cases against a trial court), or by the State Prosecutor if the contempt is committed against a court in which the State Prosecutor is exercising his statutory authority. The rule further provides that an order of the court or petition filed by the State's Attorney, Attorney General, or State Prosecutor shall contain the information required by Rule 4–202(a) (governing the contents of a criminal charging document). The order of court, or the petition, is to be served, together with a summons or warrant, in the manner specified in Rule 4–212 (which governs the issuance, service, and execution of a criminal summons or warrant).

Rule 15–206 is equally detailed in governing the procedures to be followed in civil contempt proceedings. It provides, *inter alia,* that such proceedings may be instituted by an order of the court or by a petition filed by any party to the action in which the alleged contempt occurred or, if the court so requests, by a petition filed by the Attorney General. The contents of the court's order or the petition initiating the contempt proceedings shall comply with Rule 2–303, which governs the form and contents of pleadings in civil actions. Unless the court finds that a petition for contempt is frivolous on its face, the court shall issue an order. That order, and any order entered by the court on its own initiative, shall state the time within which an answer of the alleged contemnor shall be filed and the time and place at which the alleged contemnor shall appear in person for a hearing.

▇▇▇ The contempt proceedings in this case were flawed from beginning to end. Absent an acceptable excuse, appellant's failure to appear for trial on 15 April 1998 was a direct contempt. The court did not attempt to punish it summarily. Indeed, it did nothing to initiate contempt proceedings. Appellees filed a Motion for Sanctions, in which they asserted that appellant was guilty of a criminal contempt. They sought monetary compensation for the time spent preparing for the

aborted trial. Although the motion referred to appellant's conduct as a direct criminal contempt, it did not purport to, and could not, initiate criminal contempt proceedings. Only the State's Attorney for Baltimore County, at the request of the court or appellees, could do that. Rule 15–205(b)(2) and (5). It did not purport to be a petition to initiate constructive civil contempt proceedings either, and the court certainly did not regard it as such; no order pursuant to Md. Rule 15–206(c)(2) was issued.

Eventually, after a great deal of dispute as to which pending motions should be heard by the court, and when they should be heard, the court set a hearing date on all of the motions that each side wanted heard, including appellees' Motion for Sanctions. It was at that hearing that the court improperly undertook to punish appellant for a direct contempt as if it were conducting a summary contempt proceeding.

There had been no summary contempt proceedings at or near the time of the alleged direct contempt, no prosecution for criminal contempt by the State's Attorney for Baltimore County, and no order of court initiating either a civil or criminal contempt in accordance with Md. Rules 15–204, 15–205, or 15–206. Consequently, appellant had no warning (other than appellees' assertion that appellant's failure to appear for trial constituted a direct criminal contempt) that the hearing on 29 July 1998 would evolve into an attempt by the court to conduct a summary contempt proceeding. Although Appellant did not *specifically* argue that point on appeal, he did contend that the court violated Rules 15–203 and 15–205 in failing to notify him that it was considering a finding of civil contempt.

 Appellees argue that the procedural deficiencies in the proceeding were waived. They assert that "despite the fact that Mr. Hermina had three separate opportunities to raise any perceived procedural problems, *none* of the deficiencies raised here on appeal were raised below." (Emphasis in original.) To that argument, appellant responds that, among other defects in the proceedings, the court failed to comply

with Rule 15–203(b), which provides that, in cases of direct contempt,

> "[e]ither before sanctions are imposed, or promptly thereafter, the court shall issue a written order stating that a direct contempt has been committed and specifying:

> \* \* \*

> (2) the evidentiary facts known to the court from the judge's own personal knowledge as to the conduct constituting the contempt, and as to relevant evidentiary facts not so known, the basis of the court's finding."

The court's order finding Mr. Hermina guilty of direct civil contempt and imposing a sanction therefore states that the court's findings are set forth in a transcript filed and sealed by the court. Having examined that transcript, we agree with appellant that the order, including the transcript, does not comply with Rule 15–203(b)(2). After excoriating Mr. Hermina for including "scandalous, abusive and defamatory statements as well as personal attacks against opposing Counsel" in the memoranda he filed with the court, the presiding judge stated:

> More importantly, your conduct on April 15, 1998, in failing to appear for trial exhibited a blatant disregard, inconvenience and lack of respect for this Court, my staff, opposing Counsel and prospective witnesses. Your actions and outrageous conduct make a mockery of the judicial system and I will not tolerate it. I do not believe the excuses for your failure to appear for trial on April 15, 1998, and I find your conduct contemptuous.

Having said that and having invited this Court to review the various memoranda filed by Mr. Hermina, which he described as "replete with falsehoods, harassments, defamatory statements, personal attacks, lack of candor and conduct unbecoming a member of [the] Bar," the judge announced:

> In accordance with Rule 15–203 and Rule 15–202 of the Maryland Rules of Procedure, I find you guilty of direct civil contempt of this Court.

The order finding Mr. Hermina in contempt and sanctioning him for it does not comply with Rule 15–203(b)(2). It does not, as required by that rule, specify the evidentiary facts known to the court from the judge's own personal knowledge as to the conduct constituting the contempt and, as to any relevant evidentiary facts not so known, the basis of the court's findings. That the judge had personal knowledge that Mr. Hermina did not attend court on 15 April 1998 may have been self-evident. But it is not self-evident what other evidentiary facts, not personally known to him, he regarded as relevant, and to what extent those facts formed the basis for his decision. The purpose of the recitation of such facts is to provide a reviewing court a basis for assessment of the legal sufficiency of the evidence, *Jones v. State*, 32 Md.App. 490, 362 A.2d 660 (1976), and to enable the appellate court to determine whether a direct contempt has been committed and whether the court had the power to punish it. *Thomas v. State*, 99 Md.App. 47, 635 A.2d 71 (1994). To the extent that a contempt order does not specify those facts, appellate review of a summary conviction for contempt would be circumscribed. *Robinson v. State*, 19 Md.App. 20, 308 A.2d 712 (1973).

The failure of the court to comply with Rule 15–203(b)(2) renders its order of contempt fatally defective in substance as well as form. As to that defect, appellant had no opportunity, other than by post judgment motion, to object. There is no requirement for a party aggrieved by a judgment to file a motion to reconsider or alter it before noting an appeal.

The defect in the judgment, failure to specify the evidentiary facts on which it was based, as required by Rule 15–203(b)(2), requires that we reverse it. Normally, we would not have undertaken to address the other procedural errors and defects set forth above, but the rule that would ordinarily preclude us from deciding such issues permits us to do so in this case. Md. Rule 8–131(a) provides:

(a) *Generally.* The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–

322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Should the judge who presided over the case below undertake to reinstitute contempt proceedings against Mr. Hermina, such proceedings, for conduct that would constitute a direct contempt, would have to commence, in accordance with Md. Rules 15–204, with an order specifying the evidentiary facts within the judge's personal knowledge, and the proceedings thereafter would have to be conducted in accordance with Rule 15–205 or Rule 15–206. It should be noted that Rule 15–207(b) would disqualify that judge from sitting at the ensuing hearing if Mr. Hermina does not consent.

**JUDGMENT REVERSED.**

**CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**