ANDREW R. BECKER *v.* THERESA M. BECKER

[No. 264, September Term, 1975.]

*Decided December 4, 1975.*

The cause was argued before GILBERT, LOWE and MASON, JJ.

*Joseph F. Lentz, Jr.*, with whom were *Lentz & Hooper* on the brief, for appellant.

*Gordon L. Peltz* for appellee.

GILBERT, J., delivered the opinion of the Court.

Alison Lurie penned a recent novel, a best seller, entitled "The War Between the Tates." The appeal now before us, brought by Andrew R. Becker against his former wife, Theresa M. Becker, makes the sometimes hilarious war that existed between the Tates look like a minor skirmish by comparison and there is no comedy in this litigation.

The present case started its journey to this Court when a Bill of Complaint was filed by the appellee in the Circuit Court for Baltimore County on May 12, 1970 seeking alimony, support and maintenance. After the appellant's answer to the bill was filed the pleadings became voluminous. There was an amended bill asking a divorce on the ground of desertion, a cross-bill on the same ground, a supplemental cross-bill in which appellant alleged adultery on the part of the appellee, and a supplemental bill by appellee alleging voluntary separation. Interrogatories and supplemental interrogatories were propounded and answered, and other discovery methods were utilized. At one point, for want of a plea to a supplemental bill, the appellee obtained a decree *pro confesso* against appellant, but on motion of appellant and order of court, it was stricken.

Finally, the controversy was heard in open court. Appellee prevailed, and she was awarded a divorce *a vinculo matrimonii*. She was, however, denied alimony. The appellant's amended cross-bill in which he had charged appellee with adultery was dismissed. The appellee was awarded custody of the parties' minor child. The decree was detailed and specific as to the visitation rights of the appellant. It provided:

"It is further ADJUDGED, ORDERED and

DECREED that the custody and guardianship of the minor child of the parties, Joseph Andrew Becker, is awarded to Theresa M. Becker subject to the continuing jurisdiction of this Court with the right of visitation unto Andrew R. Becker beginning on Saturday, December 15, 1973 from 1:00 P.M. to 8:30 P.M. and on Sunday, December 23, 1973 from 1:00 P.M. until 8:00 P.M. and continuing on alternate Saturdays and Sundays at and during the times above set forth until February 24, 1974 and thereafter from Saturday, March 2, 1974 from 1:00 P.M. until Sunday, March 3, 1974 until 8:00 P.M. and continuing on alternate week-ends thereafter and provided further said Andrew R. Becker shall have the right of visitation for part of major holidays and additionally, part of the birthday of said minor child and provided further that said Andrew R. Becker shall have the right of visitation for a period of one or two weeks during summer vacation and that said Andrew R. Becker shall have the right of visitation at any times not herein stipulated by agreement of the parties hereto. Further, that the parties hereto shall not remove the said minor child from the State of Maryland for a period of more than forty eight (48) hours without Order of Court with the exception of such longer periods for summer vacation and that the provisions hereof with regard to custody and visitation shall be under the supervision of the Probation Department of Baltimore County. . . ."

Feeling aggrieved at the Chancellor's decree in the divorce case, appellant entered an appeal. On motion by the appellee the appeal was "stricken" by the circuit court on the ground that it was noted one day after the thirty day period provided by Md. Rule 1013 had expired.

Approximately five months after the decree was entered, the appellee sought modification of the edict. She recited as reasons therefor:

"3. That said Decree contained certain restrictions

with regard to the removal of said minor child from the State of Maryland by either party.

4. That since the date of the aforesaid Decree, the Plaintiff has married on February 22, 1974 to David Benfield. That said David Benfield is a member of the United States Navy and has been stationed in the State of Florida. That in September, 1974, said David Benfield will be temporarily assigned for duty in Sicily, Italy for a period of five months after which he will return to Florida.

5. That the best interests of the aforesaid minor child would be served by a modification of the abovementioned Decree to permit the removal of said minor child from the State in accord with the present circumstances of the parties and to provide for the right of suitable visitation unto the Defendant."

The record is silent as to the ruling the court made on the Petition for Modification, but it does show that a meeting occurred between counsel for the parties and the late Judge Walter M. Jenifer. We deduce from the judge's letter to counsel that the meeting took place on September 17, 1974.

One month after the meeting the appellant fired a double-barreled shot at the appellee. He asked, in contemporaneously filed petitions, that custody of the child be granted to him, and that appellee be adjudged in contempt for violating the clear provisions of the divorce decree by removing the minor child of the parties from the State, without permission of the court, for longer than the divorce decree's prescribed 48 hour period. The "Petition for Contempt" avers that appellee was at that time in Florida and that she did not intend to return to Maryland. A "Show Cause Order" was issued by Judge Jenifer. Appellee's solicitor promptly responded that he was experiencing difficulty in locating the appellee because she had ". . . left the country as she was permitted to do by . . . [the] Court's ruling of September 17, 1974 and that she is not scheduled to return until December 20, 1974."

The hearing on the "Petition for Contempt" was held before Judge Walter R. Haile on April 3, 1975. The appellee was not personally present although her counsel was there. The record of the proceeding before Judge Haile seems to indicate that either Judge Jenifer, at the September 17, 1974 meeting with counsel, permitted appellee to leave the country for six weeks, or counsel agreed between themselves with the apparent consent of their clients that appellee could leave the country for two months. If Judge Jenifer did, in fact, allow the appellee temporarily to alter the terms of the custody portion of the divorce decree, the better practice is for an order to have been passed to that effect, and such order to be a part of the record. On the other hand, if counsel and the parties agreed among themselves temporarily to modify the decree, they were without authority to do so, but such fact is certainly evidence of lack of wilful contempt. Judge Haile was informed that there was presently pending in a Florida court another part of this conflict. The Florida case is an attempt by the wife to change the decree. Appellant has seemingly submitted to the jurisdiction of the Florida court and is contesting the appellee's suit.

Patently, appellee could not be in contempt at the time the petition to cite her for contempt was filed. As we read the record, and as Judge Haile found, appellee was permitted, on September 17, 1974, to leave not only the State, but the country for a period of six weeks. It is possible that her absence was sanctioned by the parties themselves for a period of two months. The "Petition for Contempt" was brought by the husband, appellant, two weeks before the expiration of the time permitted by Judge Jenifer to be absent, or four weeks before the time authorized by the parties came to an end. Notwithstanding appellant's allegation that he had reason to believe the appellee would not return to Maryland, his petition was premature. Appellant appears to have endeavored to invoke a sort of anticipatory breach of faith on the part of the appellee. Be that as it may, Judge Haile found that appellee was not in contempt for leaving the State without permission as alleged in appellant's petition to cite appellee for contempt.

Appellant has appealed. Although we shall dismiss the appeal for the reasons stated *infra,* we opine that if this case were properly appealable and, the issue thus before us, we would have no hesitancy in holding that Judge Haile's judgment was correct for the reason that, irrespective of appellee's subsequent conduct with regard to the decree, at the time the "Petition for Contempt" was brought, appellee was permissibly absent from the State and, hence, not then in contempt.

We have indicated that we shall dismiss this appeal. We explain our reasons. Maryland Ann. Code, Courts and Judicial Proceedings Article § 12-301 provides:

> "Except as provided in § 12-302, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended."

Courts Art. § 12-302 (b) states:

> "Section 12-301 does not apply to appeals in contempt cases, which are governed by §§ 12-304 and 12-403." [1]

Courts Art. § 12-304 (a) mandates, in pertinent part:

> "Any person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court. . . ."

The statute requires that two (2) prerequisites be satisfied before an appeal may be successfully maintained in a contempt case. Firstly, there must be an "order or judgment

---

1. Section 12-403 is concerned with appeals from the District Court.

passed to preserve the power or vindicate the dignity of the court" and, secondly, the appeal must be prosecuted by the person adjudged to be in contempt. Neither prerequisite is met in the instant case.

Furthermore, the Court of Appeals in *Tyler v. Baltimore County*, 256 Md. 64, 259 A. 2d 307 (1969) considered a case wherein Tyler appealed from a refusal by the late Judge Jenifer to hold certain Baltimore County officials in contempt for failure to comply with a Writ of Mandamus that had been directed to those officials ordering that they issue a permit to Tyler ". . . to operate a sanitary landfill on a site in the lower end of the County known as the Norris Farm. . . ." The County moved to dismiss the appeal on the ground that ". . . the appeal of one adjudged in contempt is the only appeal the law allows in contempt cases. . . ." 256 Md. at 69. Chief Judge Hammond, for the Court in *Tyler*, traced the history of appellate review of ". . . a finding of contempt or a refusal to find contempt. . . ." He noted that no appeal existed at common law. By statute or constitutional provision the common law rule has been relaxed in most jurisdictions. At the time *Tyler* was decided, former Md. Ann. Code art. 5, § 18 was controlling. It provided the same as what is now the above quoted portion of § 12-304 (a) of the Courts Art. *Tyler* makes it vividly clear that in this State only those adjudged in contempt have the right to appellate review. The right of appeal in contempt cases is not available to the party who un-successfully sought to have another's conduct ad-judged to be contemptuous. *Tyler v. Baltimore County*, 256 Md. at 71.

*Tyler* points out, however, that

"There may be occasional instances in which the order imposing the punishment for civil or criminal contempt or refusing to impose the order for civil contempt is so much a part of or so closely intertwined with a judgment or decree which is appealable as to be reviewable on appeal as part of or in connection with the main judgment. . . ." 265 Md. at 71.

*Tyler* was held to be not such a case. Likewise, the matter now before us is not such a case because the only "judgment" before us is the finding that appellee was not in contempt. If the main question of change of custody had been decided along with the contempt proceeding, we might be required, under *Tyler*, to examine whether the failure to hold appellee in contempt was an interwoven part and parcel of the "main judgment"; but even if that were the situation in this case, we have already expressed our belief that Judge Haile correctly found appellee free of contemptuous conduct as of the time the appellant's petition was filed.

Appellant in the instant case has no standing to appeal; he is not the party who has been adjudged in contempt, the issue is not intertwined with an appealable decree or judgment and thus his unsuccessful attempt to have appellee held in contempt is not under Courts Art. § 12-304, nor *Tyler*, appealable.

*Appeal dismissed.*
*Costs to be paid by appellant.*