698 A.2d 1222

Robin L. (Wagner) SCHWARTZ

v.

Richard B. WAGNER.

No. 1503, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Aug. 29, 1997.

Mercedes Samborsky, Joppatowne, for Appellant.

Fred S. Hecker (MacDonald & Hecker, P.A., on the brief), Westminster, for Appellee.

Submitted before CATHELL and SONNER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

ROBERT C. MURPHY, Judge (retired), Specially Assigned.

The question presented by the appellant Robin (Wagner) Schwartz (Robin) is as follows:

Whether the body attachment, issued by the [Circuit Court for Carroll County] to incarcerate appellant for failure to pay the $2,433.50 purging provision of an order finding her in contempt for failure to pay child support, was properly issued where no hearing was held to determine present ability to pay the purging provision.

The determination of this issue necessitates review of certain events preceding the present appeal in the long-enduring domestic litigation between Robin and Richard B. Wagner (Richard), her former husband, as hereinafter set forth in an earlier opinion of this court involving the same parties, namely *Wagner v. Wagner* (*Wagner I*), 109 Md.App. 1, 674 A.2d 1 (recons.denied)(1996).

The parties were married on February 16, 1979; two children were born of the marriage, Kris and Erika. In 1986,

Robin declared her desire that the parties divorce and she initiated a separation by leaving the marital home with her then two-year-old daughter Erika. Richard filed a complaint for immediate custody of both children as a result of which Erika remained with Robin and Kris with Richard. A five-day trial on the merits of the parties' various complaints began on May 16, 1988 before the Circuit Court for Carroll County, with testimony being heard from nineteen witnesses. At the conclusion of the hearing, Richard was granted a divorce *a vinculo matrimonii* on grounds of desertion, the court having found Robin to be at fault in the demise of the marriage. Thereafter, there was a steady stream of post-divorce pleadings filed by both parties concerning child custody, visitations and allegations of sexual abuse and violence on Richard's part. Richard filed numerous complaints against Robin which, among other things, alleged that she planned to leave Maryland with Erika without his consent. Robin was permitted to retain custody of Erika expressly conditioned, however, upon her continued residence in Maryland. In December of 1989, the court approved an agreement between the parties, permitting Robin to move to Colorado with Erika. It also established a visitation schedule.

On July 5, 1990, Richard filed a complaint alleging Robin's failure to adhere to the agreement. On January 18, 1991, Richard sought an order for child support from Robin. These complaints and motions were followed by numerous others growing out of the ongoing litigation, including an allegation by Robin that Richard had sexually abused Erika. Thereafter, there was a spate of motions concerning the proper jurisdiction in which they were to be filed which was resolved in favor of jurisdiction in the Maryland courts.

On February 5, 1992, a trial ensued on various issues, including child support. On April 2, 1992, the trial court ordered that Richard be given immediate custody of Erika.

In April, 1992, Richard located Robin and Erika at a women's shelter in California. Through further court proceedings, Richard effected the return of Erika to Maryland.

Robin subsequently returned to Maryland and filed a petition for visitation.

On May 7, 1993, the trial court issued an order requiring Robin to pay $1180 per month in child support, but this was suspended a month later after it was determined that she had been laid off from work; however, the court further ordered that the child support was to resume once Robin secured other employment, or it was found that she voluntarily impoverished herself to avoid making child support payments.

On July 20, 1993, Richard filed a petition to hold Robin in contempt for failing to pay the court-ordered child support, she having obtained employment in the interim period.

In November, 1994, Richard's petition for contempt arising from Robin's non-payment of child support resulted in the trial court's determination that Robin had voluntarily impoverished herself to avoid paying child support. The trial court did not, however, hold Robin in contempt of its earlier child support order because at that time it was unclear whether she had realized any income from her new job. The court, instead, reduced Robin's child support obligation to $1,011.10 per month.

Upon Robin's appeal to this court, we summarized the Maryland law governing voluntary impoverishment in a child support context. In *Wagner I, supra,* which we decided on February 6, 1996, the issue before us, among seven others, was whether the trial court erred when it ruled that Robin had voluntarily impoverished herself. We said that in determining a parent's child support obligation, the courts take into consideration the parent's actual income, if the parent is employed, and potential income if the parent is voluntarily impoverished. 109 Md.App. at 42, 674 A.2d 1. We said that once a parent is found to be voluntarily impoverished, his or her potential income will be determined by the parent's employment potential and probable earnings level based on, but not limited to, recent work history, occupational qualifications, prevailing job opportunities and earnings levels within the community. *Id.* at 42–43, 674 A.2d 1.

We noted that in the present case, the trial court found that upon Robin's return to Maryland from California, she easily obtained employment, earning approximately $60,000 per year; that she thereafter contracted with the RKE Corporation on June 20, 1993 to provide her services for approximately $20,000 per year; that RKE was a corporation in which she had an interest and the power to participate in management decisions. Robin's underemployment, the trial court said, significantly hindered her ability to meet her child support obligation, justifying its conclusion that she was voluntarily impoverished.

Citing *Wills v. Jones,* 340 Md. 480, 667 A.2d 331 (1995), we observed in *Wagner I* that the Court of Appeals concluded that the legislature intended that the parent's support obligation can only be based on potential income when the parent's impoverishment is intentional. We further noted that in *Wills,* the Court of Appeals said that in determining whether a parent is voluntarily impoverished, the question is whether a parent's impoverishment is voluntary, not whether the parent has voluntarily avoided paying child support. 340 Md. at 496, 667 A.2d 331. The Court further held in *Wills* that the parent's intention regarding support payments is irrelevant; rather, the focus is upon whether parents who impoverish themselves with the intention of avoiding child support obligations are voluntarily impoverished. *Id.*

In *Wagner I,* 109 Md.App. 1, 674 A.2d 1, we quoted from our own decision in *John O. v. Jane O.,* 90 Md.App. 406, 423, 601 A.2d 149 (1992), that:

> [o]nce a court concludes that a parent is voluntarily impoverished, it must then make findings regarding the factors related to potential income. Both issues are left to the sound discretion of the trial judge. The court's factual findings will not be disturbed unless they are clearly erroneous, and the rulings based on those findings must stand unless the court abused its discretion.

In this regard, we noted in *Wagner I* that the trial court, in its November, 1994 order, held that Robin had impoverished

herself intentionally and of her own free will. We said that the trial court properly evaluated the facts in characterizing Robin as voluntarily impoverished, stating at page 47 of 109 Md., 674 A.2d 1:

> Evidence adduced at trial indicated that she freely contracted to work for RKE at a salary equal to one-third of that which she had been previously receiving, when, in actuality, she had experienced little trouble securing a position earning her $60,000 per year following her return to Maryland. Further, Ms. Wagner freely transferred her house to her parents for nominal consideration. It appears, therefore, that she acted voluntarily and intentionally in impoverishing herself.... [P]arents who act so as intentionally to avoid their child support obligations are within the class of persons who are considered voluntarily impoverished under the statute.

In so concluding in *Wagner I,* we observed that the circuit court had imputed an annual income of $59,962 to Robin, which was the average of her reported salaries from 1989 through 1992; that it also concluded from the evidence that Robin has made no diligent effort to obtain employment on a full-time basis and was making every effort possible to avoid paying child support; that Robin was a stockholder, the President, and a member of the Board of Directors of the RKE Corporation, by which she was employed; that Robin was "completely unbelievable"; that Robin's allegation that she can't work long hours because of her health was belied by the fact that she logged over 4000 miles driving across the country on two occasions and produced no evidence as to her medical condition; and that her financial statements indicated substantial reductions in her outstanding debts, other than satisfying her child support obligation, including $34,000 paid to her father for a debt allegedly owed to him.

I

Prior to the issuance of our mandate on May 6, 1996 in *Wagner I,* Richard had filed another petition for contempt for

Robin's failure to pay child support as earlier ordered by the trial court. On August 29, 1995, after a hearing at which Robin was represented by counsel, and afforded an opportunity to present evidence, the trial court held that she was in civil contempt for failing to pay child support. It sentenced her to 179 days in the Carroll County Detention Center and set a purge provision of $2433.50 for Robin to obtain her release from the detention center. Robin did not, however, pay the amount of the purge provision, nor did she surrender herself to the detention center. Instead, she filed a notice of appeal on September 27, 1995.

On October 3, 1995, the trial court issued a body attachment for Robin which she promptly challenged, claiming financial inability to pay the amount of the purge provision. On December 1, 1995, upon Robin's petition to quash the body attachment, we stayed service of that document, pending a final resolution of Robin's then pending appeal in the *Wagner I* case, which we decided on February 6, 1996. After denying Robin's motion for reconsideration on April 30, 1996, our mandate in *Wagner I* issued on May 6, 1996, after which, on June 19, 1996, we lifted our stay of the issuance of the body attachment.

On June 20, 1996, the trial court reissued the body attachment. On June 23, 1996, Robin filed a "Motion for Reconsideration of Order Granting Body Attachment," appending thereto an affidavit setting forth her reasons for her present inability to pay the purge provision. She maintained that under *Lynch v. Lynch,* filed by the Court of Appeals on June 10, 1996, 342 Md. 509, 677 A.2d 584, she could not be incarcerated for civil contempt of the court's order absent proof that she was presently financially able to comply with it.

The circuit court on July 11, 1996 denied Robin's motion for reconsideration, following which she filed a notice of appeal on August 5, 1996. She maintained that the trial court erred when it reissued the body attachment without a hearing to determine her present financial ability to pay the purging assessment.

Robin's reliance on *Lynch* was predicated on these then governing principles of law, the first of which was that the conduct which precipitates the initiation of civil contempt proceedings is the alleged failure, in contravention of a court order, to do that which the court has ordered be done; and if that conduct has been proven, the defendant may be held in contempt. 342 Md. at 519, 677 A.2d 584. If the proceedings are to have the desired effect, the court said it must have the means to force the defendant to obey its order, namely, to impose penalties designed to achieve that effect, one of which is imprisonment, notwithstanding that the proceedings are civil in nature. *Id.* But, the Court continued, before the contemnor may be imprisoned for civil contempt, he or she must have an opportunity to purge the contempt; and when the court order requires the payment of money, "the defendant must have been fully capable of having complied . . . [and thus] within the power of the defendant to do so." *Id.* at 520, 677 A.2d 584. Whether the defendant is able to comply with the court order is, however, "a matter of defense," so that where the alleged contemnor can establish a valid defense, such as the unintentional inability to obey the order, imprisonment is not proper. *Id.* at 521, 677 A.2d 584. Consequently, when the order calls for the payment of money, the defendant is entitled to the opportunity to show that he or she had neither the estate nor the ability to pay the obligation. *Id.* In this regard, "the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his present ability to pay." *Id.* (quoting *Elzey v. Elzey*, 291 Md. 369, 374, 435 A.2d 445 (1981)). Thus, the Court in *Lynch* said that only if the alleged contemnor "fails to show such inability is a finding of civil contempt and subsequent imprisonment permitted." *Id.* at 521–522, 677 A.2d 584. If, however, the defendant does not have the money, or any means of obtaining it, payment cannot be coerced by a civil contempt order, and this is true "whether the responsible party chose intentionally to frustrate the court order, as, for example, acting in bad faith, to impoverish him or herself, or whether his or her inability is unintentional." *Id.* at 523, 677 A.2d 584.

In applying those principles to the evidence in *Lynch*, the court first noted that the defendant was ordered to pay monthly child support for her two minor children. When the order was passed, she was working for the federal government, making a sufficient amount to comply with the order. She failed, however, to make the payment ordered by the Court, and an arrearage of more than $5000 accumulated. Contempt proceedings were thereafter initiated against her. In her testimony at the contempt hearing, the defendant acknowledged that she had quit her job after about a year to care for her sick mother, and had only sporadically sought other employment after her mother died. She maintained that, other than $20 in her possession, she had no assets, did not receive public assistance, social security, workers' compensation, or any other like benefits. She lived rent free in her mother's house, and received free food from a charitable organization.

The trial court held the defendant in contempt; it sentenced her to 20 days in the detention center, unless she purged the contempt by paying $500. The court determined that she could purge the contempt because of the "discretionary life style" that she led, i.e., she received the necessities from people with no obligation to supply them and, but for them, she would have been required to supply them for herself.

On appeal, the Court of Appeals, in reversing the judgment below, concluded that there was absolutely no evidence from which it could properly be found that the defendant had a present ability to pay the purge amount. It emphasized that only the defendant testified in the case and her testimony was without contradiction, and that aside from $20, she had no income, or assets, or any way of raising the purge amount.

Robin seeks to bring herself within the holding in *Lynch*, even though, unlike the on-the-record testimonial evidence of the alleged contemnor in that case, Robin blandly disavows that she possesses the present ability to pay the purge amount of $2433.50 and calls upon petitioner to present evidence to the contrary. In this regard, the record before us consists of little

more than (1) the circuit court's opinion of November 20, 1995, finding that Robin voluntarily impoverished herself, from which she appealed but failed to perfect the appeal by transmitting the record on appeal or filing a brief; (2) Robin's answer of June 6, 1996 in response to Richard's motion of May 21, 1996, that the body attachment be reissued, wherein Robin again asserts that she does not now have, and never had, the financial ability to pay the purge provision, and (3) Robin's motion for reconsideration of the court's order reissuing the body attachment, claiming that, based on the evidence, she is financially unable to pay the purge provision.

After considering Robin's undated affidavit, the circuit court denied her motion for reconsideration on June 26, 1996, apparently without an evidentiary hearing, no request by Robin for a hearing being appended to her motion for reconsideration, or otherwise disclosed by the record, as required by Maryland Rule 2–311. Nor does it appear from the record that Robin personally attended any of the hearings or ever testified and was subject to cross-examination.

In her undated affidavit, prepared by her attorney, Robin asserts that there is not a scintilla of evidence that she possesses the estate or resources to pay the purge provision and that in the face of her evidence, Richard has failed to carry his burden to show that she has the financial ability at present to pay the $2433.50 to purge her contempt. In her affidavit, Robin states, without providing a specific time frame relevant to her present financial ability to purge her contempt, that she has serious health problems related to her heart; that while she is working full time as a computer programmer, all of her income is used to pay the existing child support obligation and to provide for her basic living expenses; that she was unemployed for three months—from February until April of 1996—to care for her ill parents, but that even if her present inability to pay the purge provision is the product of her bad faith, compliance with the court's order cannot be coerced by civil contempt, but rather only by criminal contempt where her inability to comply was caused by a deliberate effort or a wilful act of commission or omission on her part

with the knowledge that it would frustrate the order of the court.[1]

Beyond her bare affidavit, which does not indicate her income from her present employment, or how long she has been working at that job, and in the face of Richard's counter evidence, and the circuit court's factual findings, we are unable to conclude that Robin has established her inability to purge her contempt as of the time of the reissuance of the body attachment.[2] Robin's reliance on *Lynch*, therefore, is badly misplaced since, in that case, the alleged contemnor's testimonial evidence was neither contradicted nor impeached but, rather, clearly established her inability to pay the purge provision. Evidence of that calibre is woefully missing on the record in the present case, and consequently we conclude that although afforded an opportunity to prove her present inability to pay, she has failed to do so. Accordingly, we shall affirm the judgment of the Circuit Court for Carroll County to reissue the body attachment, and direct that, consistent with the circuit court's earlier order of November 20, 1995, Robin surrender herself to the Carroll County Detention Center, unless she purges her contempt citation by paying the amount of the purge provision.[3]

*JUDGMENT AFFIRMED WITH COSTS.*

---

**1.** Our cases so hold. *See, e.g., Lynch, supra,* at 522, 524, 528–529, 677 A.2d 584.

**2.** According to Richard's evidence, as of January 1, 1997, Robin currently is $47,906.00 in arrears in her child support obligation.

**3.** In *Ott v. Frederick County Department of Social Services,* 345 Md. 682, 694 A.2d 101 (1997), the Court of Appeals noted that Maryland Rule 15–207, applicable to civil contempts for failure to pay child or spousal support was amended by adding a new Subsection (e), which became effective January 1, 1997. The Rule, as amended, changed some of the holdings articulated in *Lynch,* but the present case is not affected by the rule change.