773 A.2d 612

HOWARD COUNTY, Maryland,

v.

The PACK SHACK, INC.

No. 1635, Sept. Term, 2000.

Court of Special Appeals of Maryland.

June 4, 2001.

722

Paul T. Johnson, Deputy County Solicitor (Barbara M. Cook, County Solicitor and Louis P. Ruzzi, Senior Assistant County Solicitor, on the brief), Ellicott City, for appellant.

Joseph S. Kaufman (Howard J. Schulman and Schulman & Kaufman, LLC, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., JAMES R. EYLER and RAYMOND G. THIEME (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

█ The principal issue addressed in this opinion is whether there is a right of appeal from a circuit court's denial of a petition for constructive civil contempt for failure to obey an injunction by the party who filed the petition. We conclude that, while ordinarily there is no such right of appeal, there is in this case because the contempt proceeding was in the nature of a civil execution to enforce a decree intertwined with an appealable order, *i.e.*, the injunction.

## Factual Background

Howard County, appellant, filed a petition for constructive civil contempt in the Circuit Court for Howard County to enforce an injunction previously entered against Pack Shack, Inc., appellee. The prior injunction, effective June 2, 2000, enjoined appellee from using its leased premises as an "adult book or video store," in violation of the Howard County zoning regulations.[1] The injunction was entered as part of a declaratory judgment proceeding in which appellee challenged the constitutionality of Howard County zoning regulations applicable to adult video and book stores. The circuit court upheld the regulations, and this Court affirmed in *Pack Shack, Inc. v. Howard County,* 138 Md.App. 59, 770 A.2d 1028 (2001). In the matter currently before us, the circuit court found that there was insufficient evidence to hold appellee in contempt.

On December 14, 1999, in connection with the constitutional challenge, the parties entered into a stipulation pursuant to which appellee admitted that it was in violation of the applicable regulations as of the time of the trial on the constitutional issues. In that proceeding, at the circuit court level, appellee raised various constitutional challenges, but on appeal, asserted only First Amendment and Article 41 violations. *See Pack Shack,* 138 Md.App. at 68–69, 770 A.2d 1028.

---

1. Section 103.A.4.1.a defines an "adult video book or video store" as "a business establishment ... where a significant or substantial portion of the stock in trade is characterized by an emphasis on matters depicting, describing, or relating to sexual activities."

On June 9, 2000, appellant filed its petition for constructive civil contempt in the same circuit court action, alleging that appellee was in violation of the injunction, despite the fact that it had added non-adult books and viewing booths for sex education videos rather than the previously displayed adult videos. In response, appellee asserted that it was no longer operating an "adult book or video store" as defined by Howard County zoning regulation Section 103.A.4.1.a, "in that a significant or substantial portion of its stock in trade is not characterized by an emphasis on matters depicting, describing, or relating to sexual activities," and that it was not offering for viewing on the premises "videos or similar materials characterized by an emphasis on matters depicting, describing, or relating to sexual activities."

On July 19, 2000, the circuit court held a hearing. Appellant introduced certain exhibits, one of which was the December 14, 1999 stipulation entered into in connection with the constitutional challenge. David Calloway, a Howard County zoning inspector, testified in support of appellant's petition. Mr. Calloway inspected appellee's premises on January 26, February 4, and May 27, 1999, and, after the effective date of the injunction, on June 8 and July 18, 1999. Diagrams of the floor plan of the premises prepared at various points in time were admitted into evidence.

Mr. Calloway testified that on January 26, 1999, the store was divided into three areas: the northern entrance area, the main area, and the individual video viewing booth area. The northern entrance area constituted about 25% of the floor area of the store and contained both adult items and non-adult items. The main area included a counter area, behind which adult books and videos were displayed, and the main floor area, where books, videos, and novelties were displayed. Mr. Calloway testified that the main area contained only adult items. He testified that the layout and content of the store was the same at the time of the February 4 and May 27, 1999 inspections.

Mr. Calloway testified that the June 8, 2000 inspection revealed several changes. He testified that the store con-

tained the adult items that he had observed prior to the June 8, 2000 inspection, but several racks of paperback books and one rack of greeting cards had been added. In addition, the menu for the individual viewing booths indicated a selection of health and sex education films rather than a menu for adult films, which he had observed at prior inspections. Mr. Calloway testified that, at the time of the July 18, 2000 inspection, an additional rack of non-adult greeting cards had been added in the northern entrance area of the store.

On cross-examination, he testified that he had not counted the inventory in the store and did not have a specific number of adult items of inventory versus non-adult items of inventory. He further testified that it was not part of his responsibility to determine what appellee would have to do to bring itself into compliance so that it would not have a significant or substantial portion of its stock in trade in adult materials.

Vincent Bonadio, Jr. testified on behalf of appellee. Mr. Bonadio testified that he supervised the store business and, in that capacity, prior to June 2, 2000, in anticipation of the effective date of the injunction, he directed the renovation of the store and changes to the store's inventory. He testified that 500 magazines and 800 videos of a sexually explicit nature were removed and were replaced with non-adult paperbacks. He also stated that card racks, novelties, t-shirts, lingerie, sunglasses, and false fingernails were added as merchandise for sale. He did not specify how many of the non-adult items were added as part of the changes. It was undisputed that prior to the changes made as a result of the entry of the court's injunction, appellee sold non-adult merchandise, but the quantity was not specified.

Mr. Bonadio testified that he participated in an inventory of the store's merchandise after the changes had been made, and that the inventory was summarized on a document introduced into evidence by appellee. The list contained adult and non-adult items. He testified that the non-adult inventory contained 30,521 items. Of that number, 13,600 were lapel-sized flag pins. The non-adult inventory also contained 6,785 non-

adult books and 4,600 greeting cards. He testified that the adult inventory consisted of 6,390 items, which included movies, books, and sex toys.

When Mr. Bonadio testified that the decision of whether or not an item went on the adult or non-adult list was made by "people at corporate," appellant moved to strike the list on the ground that the witness lacked sufficient knowledge of its contents to warrant its admission. The court denied the motion.

On cross-examination, Mr. Bonadio acknowledged that the non-adult list included items such as latex panties and bras, edible panties, lingerie, garters, pasties, specialty condoms, and various games.

As noted previously, the circuit court refused to hold appellee in contempt, and appellant noted an appeal to this Court.

### Contentions of the Parties

First, appellant contends that the circuit court committed an error of law because it applied a "beyond a reasonable doubt" standard to a civil contempt proceeding when it should have applied a preponderance of the evidence standard. Second, appellant contends that the court erred in implicitly finding that the applicable zoning regulations were unconstitutionally vague or otherwise in violation of the First Amendment when it had already found the provisions valid in the declaratory judgment proceeding. Third, appellant contends that the circuit court erred in applying an implied percentage requirement to the "significant or substantial" language contained in the zoning regulations. Fourth, appellant contends that the circuit court erred in not beginning its analysis with appellee's admitted violation of the zoning regulations and, from that starting point, determine whether there had been a significant change in the business. Finally, appellant contends that the circuit court erred in denying its motion to strike the inventory list.

Appellee moved to dismiss the appeal on the ground that there is no right of appeal from the denial of a petition for contempt.

## Motion to Dismiss Appeal

Appellee, relying on Md.Code (1973, 1998 Repl.Vol.), Courts & Judicial Proceedings (CJ) § 12–304, contends that appellant had no right to appeal from the denial of its petition for contempt. Appellee also contends that the contempt was criminal in nature and that a reversal on appeal would subject appellee to double jeopardy. With respect to the latter point, we disagree. The petition was clearly styled a petition for civil constructive contempt and was filed in accordance with Md. Rule 15–206.[2] The circuit court declined to find contempt and, consequently, imposed no sanction. The question of whether a particular sanction is unlawful in a civil contempt proceeding is not before us.

We proceed to discuss appellee's main point, which is that the appeal cannot proceed even if it is a civil contempt proceeding. CJ § 12–301 provides, in pertinent part:

Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

CJ § 12–302(b) provides:

Section 12–301 of this subtitle does not apply to appeals in contempt cases, which are governed by §§ 12–304 and 12–402 of this title.[3]

CJ § 12–304 provides:

---

**2.** Rule 15–206, in pertinent part, provides that a proceeding for constructive civil contempt shall be included in the action in which the alleged contempt occurred and that a party to an action in which an alleged contempt occurred may initiate a proceeding by filing a petition with the court.

**3.** Section 12–402 applies to appeals in contempt cases from the District Court of Maryland. It is substantively the same as Section 12–304.

(a) *Scope of review*—Any person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interlocutory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action.

(b) *Exception*—This section does not apply to an adjudication of contempt for violation of an interlocutory order for the payment of alimony.

Appellant argues that it has a general right of appeal under § 12–301 and that § 12–304 provides supplementary authority for appeals in certain situations in contempt cases. Specifically, appellant argues that the language in the first portion of § 12–304(a) (prior to "including") refers to criminal contempt and that the second portion refers to an interlocutory order in a civil case enforcing a preliminary injunction or temporary restraining order. In this case, according to appellant, the petition for constructive civil contempt is to compel compliance with a permanent injunction and is thus governed by § 12–301. Finally, appellant points out that, to the extent that § 12–304 may be read to provide a right of appeal only to persons held in contempt, Maryland appellate courts have applied it only in cases of criminal contempt. *See Tyler v. Baltimore County,* 256 Md. 64, 71, 259 A.2d 307 (1969); *Becker v. Becker,* 29 Md.App. 339, 342, 347 A.2d 911 (1975); *Kemp v. Kemp,* 42 Md.App. 90, 399 A.2d 923 (1979), *rev'd on other grounds,* 287 Md. 165, 411 A.2d 1028 (1980); *Harford County Educ. Assoc. v. Board of Educ.,* 281 Md. 574, 576, 380 A.2d 1041 (1977); *Kelly v. Montebello Park Co.,* 141 Md. 194, 204, 118 A. 600 (1922), *superceded by statute as stated in Billman v. Maryland Deposit Ins. Fund Corp.,* 312 Md. 128, 538 A.2d 1172 (1988); and *Ex Parte Sturm,* 152 Md. 114, 125–26, 136 A. 312 (1927), *superceded by statute as stated in Billman v. Maryland Deposit Ins. Fund Corp.,* 312 Md. 128, 538 A.2d 1172 (1988).

■ We begin by noting that the express language of the applicable statutes point to the conclusion that there is no

right of appeal by a party who unsuccessfully seeks to have another party held in contempt. Section 12–301, providing for a general right of appeal, states that it applies except as provided in § 12–302. Section 12–302(b) states that § 12–301 does not apply to appeals in contempt cases. Section 12–304 provides a right of appeal in contempt cases by any person (including non-parties) but only by the person who has been held in contempt. It does not provide a right of appeal to a party unsuccessfully seeking to have another person held in contempt.

Despite the seemingly clear language, we shall proceed to review the history behind the present statutes. At common law, what is now civil contempt probably did not exist, and the original law of contempt recognized only what is now known as criminal contempt. *State v. Roll,* 267 Md. 714, 727, 298 A.2d 867 (1973). The contempt power was directed at offensive conduct which interfered with the Crown or its official agents. *Id.* What is now civil contempt was originally contempt in procedure, an equitable civil procedural device used to secure obedience to court orders. Ronald L. Goldfarb, *The Contempt Power* 50 (1963).

Common law contempt was summary in nature, and there was no right of appeal. *Tyler,* 256 Md. at 69, 259 A.2d 307 (citing *New England Novelty Co. v. Sandberg,* 315 Mass. 739, 54 N.E.2d 915, 917 (1944)). The rationale was that it was necessary for the court to be able to summarily enforce its orders without question. *Id.*

■■■ Under current Maryland law, there is a distinction between civil contempt and criminal contempt, and the distinction is important. *See* Md. Rule 15–201 *et seq.; Roll,* 267 Md. at 728, 298 A.2d 867. The criminal contempt action is prosecuted to preserve the power and vindicate the dignity of courts and to punish for disobedience of the court's orders. *Roll,* 267 Md. at 727, 298 A.2d 867; *Donner v. Calvert Distillers Corp.,* 196 Md. 475, 483, 77 A.2d 305 (1950)(quoting *Kelly v. Montebello Park Co.,* 141 Md. 194, 118 A. 600 (1922)). The government, the courts, and the people have an interest in such

proceedings. *Donner,* 196 Md. at 483, 77 A.2d 305 (quoting *Kelly,* 141 Md. 194, 118 A. 600). Civil contempt, as it came to be known, is remedial and coercive in nature, and the parties chiefly in interest are those whose private remedies are being protected by the contempt proceeding. *Roll,* 267 Md. at 728, 298 A.2d 867, *Donner,* 196 Md. at 483, 77 A.2d 305 (quoting *Kelly,* 141 Md. 194, 118 A. 600). In a civil contempt proceeding, the penalty must provide for purging. *Roll,* 267 Md. at 728, 298 A.2d 867. In a criminal contempt proceeding, the penalty is punishment for past misconduct and does not require purging. *Id.* Civil proceedings are to compel obedience to an order made to enforce remedies to which a court has found a private party to be entitled. *Id.* Such civil contempt proceedings are in the nature of an execution to enforce the judgment of the court. *Kelly,* 141 Md. at 197–98, 118 A. 600 (quoting *Bessette v. W.B. Conkey Co.,* 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904)(quoting *In re Nevitt,* 117 F. 448, 54 C.C.A. 622 (1902))).

In 1922, the Court of Appeals decided *Kelly v. Montebello Park Co., supra.* At that time, there were statutes in effect in Maryland providing for the right of appeal in civil and criminal cases, but none expressly referenced contempt actions. *See Kelly,* 141 Md. at 204–05, 118 A. 600. In *Kelly,* the plaintiffs, on November 11, 1921, filed a bill of complaint against John and Marie Kelly, seeking to enjoin them from erecting a garage on their property. A preliminary injunction was granted that same day. On November 14, 1921, the court issued an order requiring the Kellys and Harry Collison, a non-party, to show cause why they should not be held in contempt for disobeying the injunction. The court found all three in contempt, and they appealed.

With respect to appealability, the Court began by stating that at common law there was no right of appeal in contempt cases unless authorized by statute. *Id.* at 196, 118 A. 600. The Court then engaged in a discussion of the difference between civil and criminal contempt, as noted above. *Id.* at 197–98, 118 A. 600. Following that, the Court reviewed several Supreme Court cases of questionable relevance. We

note in passing that those cases did not suggest a right of appeal in the absence of a finding of contempt; the issue was simply not presented. Moreover, the courts in those cases were not presented with a situation in which there was a contempt proceeding after an appealed final judgment. The cases do stand for the proposition that, in civil contempt cases, there has been some relaxation of the rule that contempt proceedings are not reviewable on appeal in the absence of a statute expressly providing for it, particularly with respect to interlocutory orders.

Following that discussion, the court referred to the Maryland cases of *State v. Stone*, 3 H. & McH. 115 (1792), and *Williamson v. Carnan*, 1 G. & J. 184 (1829). *Id.* at 202. In *Stone*,

the general court fined the chief justice and associate justice of the Charles County court for contempt for refusing to obey a writ of *certiorari*, and that they prayed an appeal to the court of appeals, which the general court refused to grant. In the syllabus, that case is treated as authority for the statement: "An appeal does not lie from an order imposing a fine for contempt of court."

*Kelly*, 141 Md. at 202, 118 A. 600. In *Williamson*, a fine was imposed for failure to obey a preliminary injunction. It was reviewed on appeal from the preliminary injunction. *See Kelly*, 141 Md. at 202–03, 118 A. 600.

Next, the Court referred to *Longley v. McGeoch*, 115 Md. 182, 80 A. 843 (1911). In *Longley*, the defendants were found in contempt for failing to obey a preliminary injunction. The finding was reviewed on appeal from the entry of a preliminary injunction. *See Kelly*, 141 Md. at 203, 118 A. 600.

The Court, in *Kelly*, concluded that the case before it was one of criminal contempt because the sanction was punitive, not remedial, and there was nothing to indicate that the parties treated it as a proceeding in equity for civil contempt. *Id.* at 204, 118 A. 600. The Court stated that the contempt proceeding was independent of the equity case in which the injunction had been granted and was a proceeding at law for

criminal contempt. *Id.* The Court ended by stating that because there was no statute "expressly providing for appeals in contempt cases," common law applied, and the order was not subject to review. *Id.* As an alternative ground, the Court stated that, if it applied the statute providing for appeals in criminal cases, the same result would follow. *Id.* The Court explained that the statute required a bill of exceptions to be filed in order for an appeal to lie. *Id.* at 205, 118 A. 600. Since there was no bill of exceptions, the appeal would have been dismissed on that basis. *Id.*

We note that the *Kelly* Court stated that the common law rule precluded appeals from any contempt proceeding. The case before it, however, was a criminal contempt case. It did not address the existing statutes dealing with appeals in civil cases, appeal rights in civil contempt cases, or appeal rights by non-parties held in contempt. Similarly, the. Court did not discuss appeal rights by a party unsuccessfully seeking to have another held in contempt. While not a holding with respect to civil contempt, the clear tenor of the opinion, however, was that there was no right of appeal in any contempt proceeding, absent an express statutory provision.

The Court reaffirmed *Kelly* in *Ex Parte Sturm, supra.* In *Sturm,* five persons were held in contempt for violating a court order prohibiting the taking of photographs at a murder trial. Photographs were taken and the court held two photographers, the managing editor and the city editor of the *News,* and the managing editor of the *American,* two newspapers in Baltimore City, in contempt. The Court of Appeals treated it as a criminal contempt and, relying on *Kelly,* dismissed the appeal. 152 Md. at 125–26, 136 A. 312. In doing so, the Court distinguished *Emergency Hosp. of Easton v. Stevens,* 146 Md. 159, 126 A. 101 (1924).

In *Emergency Hosp.,* a doctor sued a hospital claiming that the hospital had unlawfully denied him the right to perform surgery in the hospital. On February 21, 1923, the court issued an injunction against the hospital. On September 26, 1923, the doctor filed a petition requesting that the hospital be

punished for violating the injunction. The hospital responded and also moved for dissolution of the injunction. The court, in an order, continued the injunction and reserved the question of punishment until a hearing on the motion to dissolve. The hospital appealed from that order.

The hospital, on appeal, argued that the contempt was civil in nature and that it was reviewable on appeal, as distinguished from criminal contempt which was not reviewable. The Court of Appeals stated that, because the doctor did not object to the appeal, it would proceed to address the issues, but stated that it was not modifying the rule in *Kelly*. 146 Md. at 165–66, 126 A. 101. The Court did not expressly decide whether the contempt was civil or criminal but implied that it was civil and proceeded to decide the issue because there had been no timely objection by the doctor.

In *Chambers v. State*, 3 Md.App. 642, 240 A.2d 644 (1968), a case in which the appellant had been found guilty of criminal contempt, we dismissed the appeal. In doing so, we described the decisions in *Kelly* and *Sturm* as follows:

> Under the common law there was no appeal from the judgment or order of the court in contempt proceedings regardless of whether the contempt was criminal or civil in its nature, unless specially authorized by statute. This was the conclusion reached by the Court of Appeals of Maryland in *Kelly v. Montebello Park Co.*, 141 Md. 194, 118 A. 600, 28 A.L.R. 33 (1922). There the Court in its opinion pointed out that since there is no statute in this State providing for appeals in contempt cases, the common law would apply, and "the order appealed from is not subject to review by this court." The Court of Appeals reached a similar conclusion in the later case of *Ex Parte Sturm*, 152 Md. 114, 124–126, 136 A. 312, 51 A.L.R. 356 (1927), where the Court found that a judgment imposing a fine for criminal contempt in violating an order within the legitimate scope of the court's authority was not appealable, since there was no statute in force expressly providing for appeals in such cases.

3 Md.App. at 643–44, 240 A.2d 644. The *Chambers* Court also noted that, following the decision in *Sturm*, the legislature enacted legislation authorizing appeals in contempt proceedings. *Id.* at 644, 240 A.2d 644. The Court dismissed the appeal based on the language of the statute then in effect.[4] *Id.* at 645, 240 A.2d 644.

We shall discuss the legislation referred to in *Chambers* and its subsequent history, but before doing so, we shall discuss *Tyler v. Baltimore County*, 256 Md. 64, 259 A.2d 307 (1969), perhaps the most important Maryland decision dealing with the issue before us. In *Tyler*, appellant sought a writ of mandamus to compel officials of Baltimore County to approve his application to operate a sanitary landfill and to issue him a permit for that operation. On May 28, 1969, the circuit court ordered the Director of the County Department of Public Works and the County Health Officer to approve appellant's application and ordered the Director of the Department of Permits and Licenses to issue a permit. The county employees refused to issue the permit, and on June 4, the County Council met in emergency session and passed a bill providing that no permit would be issued for a period of 90 days. On June 4 and June 5, appellant petitioned to have various county employees and officials held in contempt. The circuit court refused to do so, and appellant appealed.

The Court stated:

We are persuaded that the motions to dismiss should be granted. The right of appellate review from a finding of contempt or a refusal to find contempt did not exist at all at common law. The theory was, essentially, that the power to punish for contempt was so absolutely essential to the functioning and, indeed, the existence of courts that to be effectual the power must be instantly available and inevitable to the point of not being subject to change. 4 Am.Jur.2d

---

4. At the time when *Chambers* was decided, the statute authorizing appeals in contempt cases provided for appellate review only by the Court of Appeals. *See* 3 Md.App. at 644, 240 A.2d 644 (citing Md.Code (1951), art. 5, § 18).

*Appeal and Error* § 168; 17 C.J.S. *Contempt* § 112; *New England Novelty Co. v. Sandberg (Mass)*, [315 Mass. 739] 54 N.E.2d 915, 917:

> 'Proceedings for contempt, whether brought for the purpose of compelling compliance with the order or decrees of the court for the benefit of a plaintiff or for the purpose of inflicting punishment in the public interest upon one who has flouted the dignity and authority of the court, have always been considered as *sui generis*. Every court of superior jurisdiction has the inherent power to compel obedience to its decrees and to punish those who obstruct or degrade the administration of justice. At common law a higher court had no jurisdiction to review the proceedings of the court in which a judgment for contempt was entered.'

256 Md. at 69, 259 A.2d 307. The Court also referred to our decision in *Chambers v. State*, observing that it relied on *Kelly* in holding that under the common law rule there is no right of appellate review in contempt cases, civil or criminal. The actual holding in *Kelly* was not this broad. It held that the contempt there involved was criminal and that there had been no relaxation in Maryland of the rule that no appellate review was available in cases of criminal contempt. *Kelly* can be read to say that the common law rule is the Maryland rule and as engaging in a somewhat vague and rambling discussion not necessary to the holdings made that generally there is more relaxation of the rule in cases of civil contempt than in criminal and that perhaps some cases of civil contempt might be reviewable in Maryland.

*Id.* at 69–70, 259 A.2d 307.

The *Tyler* Court observed that the legislature, by chapter 357 of the Maryland Laws of 1927, enacted statutes expressly dealing with the right of appeal in contempt cases, the legislation referred to in *Chambers*. As of the time of the *Tyler* decision, the statutes appeared as Article 5, § 18 and Article 5, § 7(e) of the Ann.Code of Maryland (1957, 1968 Repl.Vol.). Section 18 provided that "[a]ny person may appeal to the

Court of Appeals from any order or judgment passed to preserve the power or to vindicate the dignity of the court and adjudging him in contempt of court." Section 7(e) provided that "[a]ny party may appeal to the Court of Appeals from any of the following interlocutory orders or actions of a court of equity ... (e) [a]n order, remedial in its nature, adjudging in contempt of court any party to a cause or any person not a party thereto, except orders entered requiring the payment of alimony." The Court of Appeals observed:

> Our view is that ordinarily these two statutes offer the only right in Maryland to appellate review in cases of either civil or criminal contempt, and they offer the right only to those adjudged in contempt, not to those who unsuccessfully seek to have another held to be contemptuous.

> There may be occasional instances in which the order imposing the punishment for civil contempt or refusing to impose the order for civil contempt is so much a part of or so closely intertwined with a judgment or decree which is appealable as to be reviewable on appeal as part of or in connection with the main judgment, as in *Williamson v. Carnan*, 1 G. & J. 184 and *Longley v. McGeoch*, 115 Md. 182, 80 A. 843 (in which no point was made as to the right to appeal; *cf.*, *Emergency Hospital of Easton v. Stevens*, 146 Md. 159, 164–165 [126 A. 101]). If it be assumed that at one point in the present case civil contempt could have been found, the case before us is not of that kind; indeed it seems to be in its present posture only a potential case of criminal contempt.

256 Md. at 70–71, 259 A.2d 307.

As promised, we will now discuss the history of the legislation referred to in *Chambers*. Laws of 1927, chapter 357. The law added a new section 105 to Article 5 of the 1924 Annotated Code of Maryland, and for the first time, provided an express right of appeal in contempt cases. The bill recited that it provided for an appeal "in certain cases of contempt." The statute is the forerunner of the present provision and is essentially the same as the first portion of CJ § 12–304 (prior to "including"). The same section appeared in art. 5, § 107 of

the 1939 Annotated Code of Maryland and again in art. 5, § 108 of the 1951 Annotated Code of Maryland. In the 1951 Code, however, language providing for an appeal of "an order remedial in its nature adjudging in contempt of court, any party to a cause or any person not a party thereto" first appeared as part of a section providing for interlocutory appeals. *See* art. 5, § 31. This is the forerunner of the second portion of present CJ § 12–304. In the 1957 Annotated Code of Maryland, art. 5, § 18, the language providing for appeals by those held in contempt appeared as art. 5, § 18, and the right of appeal from interlocutory orders in contempt cases appeared as art. 5, § 7(e). The language of those two sections, taken together, was essentially the same as the current CJ § 12–304.

The Courts & Judicial Proceedings Article was created as part of a Code Revision in 1973. *See* 1973 Md. Laws Special Session ch. 2, § 1. For the first time, the right of appeal by those held in contempt (art. 5, § 18), and the right to appeal interlocutory orders by those held in contempt (art. 5, § 7(e)) came together in one section, namely, CJ § 12–304. It was also the first time that language appeared in the sections providing for a general right of appeal in civil cases (the forerunner to CJ § 12–301) which expressly stated that they were not applicable to contempt actions (the forerunner to CJ § 12–302(b)). Prior to that, the statutes providing a general right of appeal in civil cases did not mention contempt.

The revisor's note to Section 12–301 stated that there was no change intended in the general rules as to appealability with one exception not pertinent to the case before us. With respect to appeals in contempt cases, the note directed readers to § 12–304.

Section 12–302(b) stated that "section 12–301 does not apply to appeals in contempt cases, which are governed by § § 12–304 and 12–403." The revisor's note to § 12–302(b) indicated that the section stated current law.

The revisor's note to § 12–304 stated that the section basically combined art. 5, § 18 and art. 5, § 7(e) and made them applicable to both law and equity.[5] The note continued:

In view of the broad language of § 12–301, the need for a special contempt appeal provision may be questioned. However, there is an unusual history with respect to appeals in contempt cases. At common law, the judgment of the trial court in a contempt case was conclusive and not reviewable by any other tribunal in the absence of express statutory authority; *Kelly v. Montebello Park Co.*, 141 Md. 194, 118 A. 600 (1922). It was not until after *Kelly* had been reaffirmed in *Ex Parte Sturm*, 152 Md. 114, 136 A. 312 (1927) that Maryland adopted the predecessor of Art. 5, § 18; see Ch. 357, Laws of 1927. In view of this historical situation, it is thought wise to retain an express authority for appeals in contempt cases.

The present sections 12–301, 12–302, and 12–304 are substantially the same as when they were first enacted in the Courts & Judicial Proceedings article.

We mention two other cases, both decided by this Court. In *Becker v. Becker*, 29 Md.App. 339, 347 A.2d 911 (1975), following the entry of a divorce decree, one of the parties filed a petition for contempt on the basis that his former spouse was violating the provisions of the divorce decree concerning child custody. The trial court declined to make a finding of contempt, and an appeal was filed. We treated it as a civil contempt but dismissed the appeal under CJ §§ 12–301, 302, and 12–304, because "[t]he right of appeal in contempt cases is not available to the party who unsuccessfully sought to have another's conduct adjudged to be contemptuous." *Id.* at 345, 347 A.2d 911. We also stated that the exception recognized in *Tyler* was not applicable because nothing but the issue of

---

5. Many of the prior Codes had separate provisions dealing with law and equity actions. The statutes that provided for an appeal in contempt cases, the forerunner of the first portion of § 12–304, were applicable to both actions. The interlocutory order provisions referencing contempt, the forerunner to the latter portion of present § 12–304, were applicable to equity actions.

contempt was before us. *Id.* at 346, 347 A.2d 911. We opined that if a change in custody had been decided, or some similar matter, that it might be a different situation, and we could have reviewed the contempt as interwoven with the other issue. *Id.*

In *Kemp v. Kemp*, 42 Md.App. 90, 399 A.2d 923 (1979), *rev'd on other grounds*, 287 Md. 165, 411 A.2d 1028 (1980),[6] subsequent to the entry of a divorce decree, a petition to modify visitation and cross petitions for contempt for violation of the divorce decree were filed. The petitions for contempt were denied. We stated that there was no right of appeal under § 12–304 by one unsuccessfully seeking to have another held in contempt. *Id.* at 101, 399 A.2d 923. We then assumed that the order declining to impose civil contempt was so closely intertwined with the question of visitation within the meaning of *Tyler*, however, that we reviewed it. *Id.* We upheld the determination of the trial court and found no abuse of discretion. *Id.*

 Our reading of the above authorities leads us to conclude that there has been no holding by the Court of Appeals that CJ § 12–301 or its predecessors do not provide a general right of appeal in civil contempt actions. Given the common law, the strong repeated *dicta* in the cases, the language in current CJ §§ 12–301 and 12–302, indicating that only § 12–304 is applicable to contempts, and the absence of a holding that the general statute does provide such a right, we will not hold that § 12–301 provides a general right of appeal in contempt cases. If such a right exists, it is up to others to declare it.

 The question thus becomes whether there is a right of appeal in the case before us because it fits within the limited right recognized in *Tyler*. The cases cited in *Tyler*, and other similar cases, stand for the proposition that there is a right of *review* in civil contempt actions when there is an

---

**6.** The Court of Appeals stated, at page 176, 411 A.2d 1028, that a refusal of contempt is ordinarily not reviewable.

order other than the contempt order that is appealable, and such right of review probably extends to a refusal to find contempt. For example, if there is a contempt ruling with respect to a preliminary injunction and there is an interlocutory appeal, the contempt ruling is reviewable. *See Williamson v. Carnan,* 1 G. & J. 184 (1829). Similarly, if a final injunction is entered and appealed, a prior contempt ruling is reviewable. *See Longley v. McGeoch,* 115 Md. 182, 80 A. 843 (1911). Even after a final judgment, if there is a subsequent order that was also appealable and in fact appealed, a ruling on contempt may be reviewable. *See Emergency Hosp.,* 146 Md. at 165–66, 126 A. 101; *Kemp,* 42 Md.App. at 101, 399 A.2d 923; *Becker,* 29 Md.App. at 346, 347 A.2d 911.

On the other hand, there is scant authority for the right to *appeal* (as contrasted to review on appeal from another order) an order in a contempt proceeding by a party unsuccessfully seeking to have another held in contempt, in the absence of another order that is appealable. Our situation falls into that category, *to wit,* the entry of a final appealable judgment, a subsequent filing of a petition for civil contempt, the denial of that petition, and a notice of appeal from that denial but not as part of an appeal from an otherwise appealable order (*e.g.,* a request for a new injunction or a motion to dissolve an injunction, or the like). In the case before us, the petition for civil contempt was filed in the same case in which the injunction had been entered and was in the nature of a civil enforcement action. It was filed promptly on August 8, 2000, and after an appeal from the contempt finding was noted, appellant filed a motion to consolidate it with the injunction case then pending in this Court. On August 31, 2000, we denied that motion but, had it been granted, the contempt proceeding would have been "intertwined," *see Tyler,* 256 Md. at 71, 259 A.2d 307, with the injunction proceeding and reviewable on appeal.[7] We do not believe the result should

---

7. In making that statement, we are mindful of the fact that the contempt ruling came after and not before the injunction that was appealable and from which an appeal was taken.

turn on our administrative decision as to how to handle the appeals. We, therefore, hold that this case comes within the *Tyler* exception, and we will proceed to the issues raised by appellant. In addressing those issues, we want to make it clear that we express no opinion with respect to the ultimate outcome of the contempt proceeding, and we express no opinion as to whether, if the circuit court declines to hold appellee in contempt on remand, that ruling will be appealable.

### Burden of Proof Standard

■ Appellant contends that the circuit court applied the burden of proof standard for criminal contempt. We agree. The circuit court, in discussing a prior contempt case in which it had been involved and which had been appealed, stated:

> And what do you think they do in Annapolis? You got it. There should have been a hearing and the evidence had to establish beyond a reasonable doubt that this was willful and deliberate. That they were not just ordinarily inept. That they had to do it willfully and deliberately—disobey the order [of] the court in order to find them guilty of contempt. So to my knowledge, that's still the standard in contempt.
>
> [Appellant's counsel]: Well, Your Honor, that's—.
>
> The Court: Willful, deliberate, premeditated.

■ In a civil contempt case that does not involve spousal or child support, such as the one before us, a petitioner must establish that the person sought to be held in contempt violated an order prescribing or prohibiting a course of conduct. *Lynch v. Lynch*, 342 Md. 509, 520, 677 A.2d 584 (1996), *superceded by statute as stated in Schwartz v. Wagner*, 116 Md.App. 720, 698 A.2d 1222 (1997).

> The conduct which precipitates the initiation of contempt proceedings is the alleged failure, in contravention of a court order, to do that which has been ordered done or the doing of that which is prohibited. When that conduct has been proven, the defendant may be held in contempt.

*Lynch,* 342 Md. at 519, 677 A.2d 584. "[B]ecause the purpose of civil contempt proceedings is to coerce future compliance, [ ] the defendant must have been fully capable of having complied; in addition, the ability to perform the act required by the court order must have been within the power of the defendant." *Id.* (citing *Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445 (1981)). Civil contempt must be proved by a preponderance of the evidence. *See A.V. Laurins & Co. v. Prince George's County,* 46 Md.App. 548, 562, 420 A.2d 982 (1980).

As the Court of Appeals recently stated in *Ashford v. State,* 358 Md. 552, 563, 750 A.2d 35 (2000), "[t]he primary purpose of punishment for criminal contempt ... is vindication of public authority, embodied in the court and represented by the judge, by punishing the contemnor for past misconduct, not to compel future compliance or to remedy the harm." (Citations omitted). Conduct must be willful, intentional, or contumacious to constitute criminal contempt. *See id.; Lynch,* 342 Md. at 522, 677 A.2d 584 (quoting *Roll,* 267 Md. at 730, 298 A.2d 867); *Cameron v. State,* 102 Md.App. 600, 608, 650 A.2d 1376 (1994); *Betz v. State,* 99 Md.App. 60, 66, 635 A.2d 77 (1994). Because the penalty imposed in criminal contempt is punishment for past misconduct, purging is not required and the penalty may be purely punitive. *Ashford,* 358 Md. at 569, 750 A.2d 35. A criminal contempt must be proved beyond a reasonable doubt. *Id.*

In summary, in non-support civil contempt cases, to find contempt, contumacious intent is not required and violation of an order must be established by only a preponderance of the evidence. Additionally, with respect to any penalties, inability to comply is a defense even if the inability to comply was willful. On the other hand, a finding of criminal contempt requires proof of willfulness or contumacious intent beyond a reasonable doubt. Inability to comply is not a defense. An intentional and deliberate inability to comply, while a defense to civil contempt, may be a basis for criminal contempt. We shall remand this case for consideration under the appropriate standard.

### First Amendment Violations

Appellant contends that the circuit court implied that the zoning regulations were unconstitutionally vague or otherwise in violation of the First Amendment. Those issues have been resolved in *Pack Shack v. Howard County*, 138 Md.App. 59, 770 A.2d 1028.

### Implied Percentage Requirement

Appellant contends that the circuit court erred in imposing an implied percentage requirement to the "significant or substantial" portion of stock in trade definition, contained in the regulations. The reasons for the court's decision are not clear, except for the fact that the court applied the wrong burden of proof standard. We have no basis for concluding that the circuit court did not understand and apply the regulations.

### Presumption of Continuance

■ Appellant contends that the circuit court erred in not basing its analysis on an admitted violation of the ordinance and a presumption that the violation continued to exist absent sufficient proof to the contrary. In *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 490, 77 A.2d 305 (1950), the Court of Appeals discussed the presumption of continuance.

There is, within certain limits, a presumption of fact that something which has been proved to exist continues to exist for a reasonable time, depending on what it is and the circumstances of the case. This is known as the presumption of continuance, and it is held to be not a legal presumption, but a matter of the burden of proof. In other words, from the circumstances and facts of each particular case are to be determined whether a necessary fact, once proved, has to be shown by the prosecution to continue to exist, or whether there is a presumption of such continuance, and the burden shifts to the defendant to prove that it no longer exists.

██ In our view, the injunction that was entered merely enjoined a violation of the ordinance as part of the declaratory judgment action based on a stipulation that appellee was in violation of the ordinance as of a certain time. Evidence was introduced by both parties in the contempt proceeding, and it was up to the court, applying the appropriate standard as to burden of proof, to make findings and exercise its discretion. Although the court did not apply the appropriate standard, we see no error in failing to apply the presumption.

### Inventory List

 Appellant contends that the circuit court erred in admitting a list of the inventory in appellee's place of business. Appellant argues that the witness lacked sufficient knowledge to justify admission of the exhibit. The witness, Mr. Bonadio, did state that he received information from "corporate" with respect to preparation of the inventory. He also stated, on both cross-examination and re-direct examination, however, that he personally knew that the list was accurate based on the knowledge obtained from his presence in the business on a daily basis. The admission of evidence lies in the sound discretion of the court. *See CSX Transp., Inc. v. Continental Ins. Co.*, 343 Md. 216, 252, 680 A.2d 1082 (1996)(stating that a trial court's decision to admit or exclude evidence will not be set aside on appeal absent a showing of abuse of discretion); *Barnes v. Rosenthal Toyota, Inc.*, 126 Md.App. 97, 108, 727 A.2d 431 (1999)(same). We find no abuse of discretion.

We shall remand this case for application of the appropriate standard of burden of proof in a civil contempt action. We express no opinion with respect to the outcome. It is up to the circuit court to make findings and exercise its discretion. If it declines to find appellee in contempt, we express no opinion as to the appealability of that order. If the circuit court finds appellee in contempt, we express no opinion as to the sufficiency of the evidence to sustain such a finding and no opinion with respect to the propriety of penalties imposed, if any.

JUDGMENT ON PETITION FOR CIVIL CONTEMPT
VACATED; CASE REMANDED TO THE CIRCUIT
COURT FOR HOWARD COUNTY FOR FURTHER PRO-
CEEDINGS CONSISTENT WITH THIS OPINION.
COSTS TO BE PAID BY APPELLEE.